STATE BANK OF VERONA, a Corporation, Respondent, v. CHAS. MAIER, Defendant, and W. C. Mowery and C. C. Lory, Appellants.

(158 N. W. 346.)

**Action — properly triable by jury — tried by court — trial de novo — not had in supreme court — findings of the trial court — presumed correct — error — burden of proof — on appellant to show — evidence.**

1. Where an action properly triable by a jury is tried by the court without a jury, the supreme court will not try the case *de novo*, but the findings of the trial court are presumed to be correct. Appellant has the burden of showing error, and a finding based upon parol evidence will not be disturbed, unless shown to be clearly and unquestionably opposed to the preponderance of the evidence.

**Evidence — trial court — judgment — guarantors.**

2. Evidence examined and held sufficient to warrant the trial court in awarding judgment against the appellants as guarantors.

Opinion filed May 31, 1916.

From a judgment of the County Court of La Moure County, *Thomas,* Special Judge, defendants Mowery and Lory appeal.

Affirmed.

*Davis & Warren* and *S. E. Ellsworth,* for appellants.

Testimony by parol may be received to explain or modify a writing purporting to be a guaranty, and to show the intention of the parties and the purpose of its making. 20 Cyc. 1423.

It is always proper to look to the surrounding circumstances in order to discover the subject-matter and the intention of the parties. Smeltzer v. White, 92 U. S. 390, 23 L. ed. 508.

The same rules applicable to the construction of other contracts obtain here. People v. Backus, 22 N. Y. S. R. 445, 4 N. Y. Supp. 729; Krakauer v. Chapman, 16 App. Div. 115, 45 N. Y. Supp. 127; Graham v. Farmers' & M. Bank, 116 Cal. 463, 48 Pac. 384; John A. Tolman Co. v. Griffin, 111 Mich. 301, 69 N. W. 649.

The true rule of construction is to give the instrument that effect which best accords with the intention of the parties, taken in connection with the subject-matter. Mussey v. Rayner, 22 Pick. 223; Belloni v. Freeborn, 63 N. Y. 383; McCasland v. O'Brien, 57 Ill. App. 636; Wills v. Ross, 77 Ind. 1, 40 Am. Rep. 279; Rindge v. Judson, 24 N. Y. 70; Gates v. McKee, 13 N. Y. 232, 64 Am. Dec. 545; Dobbin v. Bradley, 17 Wend. 422; Evansville Nat. Bank v. Kaufmann, 93 N. Y. 273, 45 Am. Rep. 204.

When a guaranty is entered into at the same time with the original, or with the acceptance of the latter by the guarantee, and forms with that obligation a part of the consideration to him, no other consideration need exist. In all other cases there must be a consideration distinct from that of the original obligation. Comp. Laws 1913, § 6653; 20 Cyc. 1413, 1417; 6 Enc. Ev. 279–283; Bank of Carrollton v. Latting, 37 Okla. 8, 130 Pac. 144, 44 L.R.A.(N.S.) 481; cases cited at p. 482 in the L.R.A. brief attached to the case last cited; First Nat. Bank v. Hawkins, 73 Or. 186, 144 Pac. 131; Cobban v. Hyde, 212 Fed. 480; Drovers' Deposit Nat. Bank v. Tichenor, 200 Fed. 318; First Nat. Bank v. Nakdimen, 111 Ark. 223, 163 S. W. 785; Ann. Cas. 1916A, 968; Delinsky v. Brodow, 113 N. Y. Supp. 7.

*Hutchinson & Lynch,* for respondent.

Resort cannot be had to parol evidence to incorporate conditions into

or limitations upon a contract of guaranty or as affecting the liability of the guarantor, in a manner not appearing from the face of the instrument.  Jones, Ev. 2d ed. art. 495.

Under our law, there was a sufficient consideration for the guaranty. Comp. Laws 1913, § 6653.

CHRISTIANSON, J.  The plaintiff is a banking corporation organized under the laws of this state, and, during all the times hereinafter mentioned, it was engaged in the banking business at Verona in La Moure county in this state.  The Farmers and Merchants' Bank was also engaged in the banking business at Verona from 1909 until its consolidation with the plaintiff bank in 1913.  The defendants Lory and Mowery were, respectively, the president and cashier of said Farmers & Merchants' Bank, and also the holders of more than two thirds of its capital stock.  The financial condition of the latter bank became somewhat involved, and certain negotiations were had between Lory and Mowery and the officers of the plaintiff bank for the purpose of effecting a consolidation of the two banks and the taking over by the plaintiff bank of the business of the Farmers & Merchants' Bank, and as a result of such negotiations the following preliminary agreement was entered into on January 18th, 1913, to-wit:

This agreement, entered into this 18th day of January, 1913, by and between C. C. Lory, president, and W. C. Mowery, cashier and secretary of the Farmers and Merchants' Bank of Verona, Verona, North Dakota, and Charles F. Krueger, president, and R. M. Crichton, cashier and secretary of the State Bank of Verona, Verona, North Dakota, witnesseth, that the said C. C. Lory and W. C. Mowery do hereby agree for themselves and for the stockholders of the Farmers and Merchants' Bank of Verona, North Dakota, to transfer and set over to the State Bank of Verona, Verona, North Dakota, the business and good will of the said Farmers and Merchants' Bank, on the following terms and for the herein stated consideration; the State Bank of Verona agrees to take over the furniture and fixtures of the Farmers and Merchants' Bank at and for the sum of $1,600, also the

lot owned by the Farmers and Merchants' Bank, and described as lot 12 in block 2 original town of Verona, North Dakota, at and for the sum of $600.

W. C. Mowery agrees to take up certain notes now carried in the books of the Farmers & Merchants' Bank to the sum of $3,000, on or before the 28th day of January, 1913.

The said W. C. Mowery agrees, as cashier for the said F. & M. Bank, to carry all interest accounts to profit and loss, to carry the exchange to profit and loss, and to charge the expense account to profit and loss.

*The said C. C. Lory and W. C. Mowery agree to guarantee the payment of all paper of a doubtful nature to the complete satisfaction of the officers of the said State Bank of Verona.* And they further agree to turn over to the order of the said State Bank of Verona all cash on hand and all credit balances with their various correspondents.

The State Bank of Verona agrees to take over the above-described real estate and the furniture and fixtures of the F. & M. Bank for the above-mentioned consideration, and they further agree to assume and pay the liabilities of the said F. & M. Bank, consisting of deposits, both check and time, and bills payable.

As a consideration for the capital stock and surplus of the F. & M. Bank of Verona, the said C. C. Lory and W. C. Mowery are to take over the $3,000 represented by the other real estate acct. and the remainder of the impaired capital in bills, res, and notes at the selection of the officers of the State Bank of Verona, Verona, North Dakota.

It is mutually agreed that the certificates of deposit and the check deposits and cashier's checks must agree with the amount as carried on the books of the F. & M. Bank, and each and every account must be proven and agree with the respective amounts as shown by the books of the bank.

It is further agreed that the officers of the F. & M. Bank will facilitate the transfer of the business in every way possible and not later than the 10th day of February, 1913. They further agree to give the State Bank of Verona their good will and full support as long as they shall continue business at Verona or in that vicinity.

In witness whereof we have hereunto affixed our seals the day and year above written;

Farmers & Merchants' Bank of Verona, North Dakota.

C. C. Lory, Pres., W. C. Mowery, Cashier.

State Bank of Verona.

By C. T. Krueger, Pres., R. M. Crichton, Cas.

A meeting of the stockholders of the Farmers and Merchants' Bank was called for the purpose of effecting the consolidation and making the proposed transfer of the assets and business of the Farmers & Merchants' Bank to the plaintiff bank binding upon all the stockholders of the former bank. Following such stockholders' meeting the following written agreement was executed:

This agreement, made and entered into this 5th day of February, 1913, by and between C. C. Lory and W. C. Mowery as a committee duly elected by the stockholders of the Farmers & Merchants' Bank, of Verona, North Dakota, for the purpose of effecting an agreement for the consolidation of said bank with the State Bank of Verona, parties of the first part, and R. M. Crichton and William Huntington as representatives of said State Bank of Verona for the purpose of effecting said agreement on behalf of said State Bank of Verona, parties of the second part,

Witnesseth, that for and in consideration of the consolidation of said Farmers & Merchants' Bank with said State Bank of Verona, in pursuance of the resolution of the stockholders of said Farmers & Merchants' Bank this day adopted at a special meeting thereof duly called and held for the purpose of voting upon the question of such consolidation, and of the assumption of all of the liabilities of said Farmers & Merchants' Bank by said State Bank of Verona do hereby authorize and direct the assignment to said State Bank of Verona the assets and property of said Farmers & Merchants' Bank listed and described in the schedule thereof hereto annexed, marked exhibit "A" and made a part hereof; and for the purpose of securing said State Bank of Verona for liability upon any and all obligations of said Farmers & Merchants' Bank not now apparent upon its books and rec-

ords and covered by the schedule of such liabilities, also hereto annexed, do hereby also authorize and direct the pledging of all the remaining assets of said Farmers & Merchants' Bank to said State Bank of Verona, and hereby constitute such pledge thereof a lien upon such remaining assets prior and paramount to the claim and lien of the stockholders of said Farmers & Merchants' Bank thereon.

In consideration whereof, the said State Bank of Verona through and by the said parties of the second part, its representatives aforesaid, do hereby assume all the liabilities of said Farmers and Merchants' Bank listed and described in the schedule thereof hereto annexed, marked exhibit "B," also all other liabilities of said Farmers & Merchants' Bank not now disclosed upon the books and records thereof and covered by said schedule.

In witness whereof, both parties have hereunto set their hands in triplicate this 5th day of February, 1913.

|                  |                  |
|------------------|------------------|
| C. W. Davis      | C. C. Lory       |
| Geo. P. Jones    | W. C. Mowery     |
|                  | R. M. Crichton.  |

The testimony shows that such agreement was signed late at night, in fact, about 2 o'clock A. M. on February 6th, 1913. The undisputed evidence also shows that on the hearing following, i. e. on the morning of February 6th, 1913, the defendants Lory and Mowery guaranteed payment of all the notes involved in the transfer, with one or two exceptions. Among the notes so guaranteed was one executed by the defendant Chas. Maier. On the back of this note the defendants Lory and Mowery affixed their signatures immediately below the following guaranty: "For value received, I hereby guarantee the payment of the within note at maturity or at any time thereafter with interest at the rate of 10 per cent per annum until paid, waiving demand, notice of nonpayment and protest."

It is undisputed that this guaranty had been stamped upon the note prior to the time the signatures of the defendants Lory and Mowery were affixed thereto. This fact is admitted by both of these defendants. The evidence also shows that the defendants Lory and Mowery, as a part of the transactions had about February 5th, 1913, assigned their corporate stock in the Farmers & Merchants' Bank to the officers of the

plaintiff bank; that a meeting of the new stockholders of the Farmers & Merchants' Bank was subsequently held, at which meeting the officers. of the plaintiff bank were elected officers of the Farmers & Merchants' Bank, and that the actual transfer of the assets and papers of the Farmers & Merchants' Bank to the plaintiff bank was not accomplished. until some days later, and that such transfer was actually made by Mr. Crichton, the cashier of the plaintiff bank.

On April 5th, 1913, the cashier of the plaintiff bank granted Maier an extension of payment of the balance remaining due upon the former note, and took a renewal note, payable to the order of the plaintiff bank, due September 15, 1913, for such balance, with the understanding, however, that such renewal note would be accepted only in case Lory and Mowery guaranteed its payment. The renewal note was. presented to Lory and Mowery and they guaranteed payment of such renewal note, the guaranty being in the same language as that upon the back of the original note. The note not being paid, the plaintiff on November 6th, 1914, instituted the present action in the county court. of La Moure county, against Maier as maker, and Mowery and Lory as guarantors. Maier defaulted, but the defendants, Lory and Mowery appeared and asserted by way of defense that the indorsements or guaranties on both the original and extension notes were made by such defendants in their capacity as officers of the Farmers & Merchants' Bank for the sole purpose of assigning such notes to the plaintiff corporation pursuant to the terms of the said consolidation agreement, and not for the purpose of creating any liability either on the part of these defendants as individuals or on part of the said Farmers & Merchants' Bank.

Appellants assert two reasons why the judgment should be reversed: (1) That the court erred in holding that the defendants Lory and Mowery indorsed the notes in their individual capacity, or for any purpose other than to transfer title to said notes to the plaintiff; (2) That the court erred in holding that such indorsements were made for a valuable consideration.

The testimony in this case shows that Mowery had been cashier of the Farmers & Merchants' Bank since 1909, and that the defendant. Lory in addition to being a banker is also an attorney. And the testimony of both appellants discloses that they were entirely familiar, not.

only with the banking business, but with the use and effect of qualified indorsements on commercial paper.

The defendant Lory testified:

Q. You are pretty well acquainted with what indorsements are, are you, Mr. Lory? You know what the indorsements are, "Without recourse," do you not?

A. I have pretty good knowledge of what it is.

Q. And when you want to merely transfer the title of a paper, you indorse it in that manner, do you not?

A. Certainly, I do.

The evidence also shows that these defendants permitted judgment to go against them by default in an action brought by plaintiff upon another note guaranteed by them at the same time that they guaranteed payment of the original note herein.

Both the original note and the renewal note were offered in evidence, the original note being identified as plaintiff's exhibit "A," and the renewal note as plaintiff's exhibit "B."

The defendant Mowery testified with reference to the indorsements as follows:

Q. Now, you was a banker a number of years, were you, Mr. Mowery?

A. For a few years.

Q. You understand indorsements, don't you, what they mean?

A. I do.

Q. You understood the meaning of this indorsement on the back of plaintiff's exhibit A when you signed it?

A. I did.

Q. I call your attention to the indorsement on the back of plaintiff's exhibit B and ask you if you signed that indorsement also?

A. I did.

Q. Was the rubber stamp written—appearing above the indorsement there?

A. It was.

Q. And you knew what that indorsement was, did you?

A. Yes, sir.

Q. You knew what this note was when you indorsed it?

A. An extension, yes.

Q. And you understood the meaning of the indorsement at the time you indorsed it?

A. It was to comply with the wind-up.

Q. It was to comply with the wind-up?

A. Yes.

Q. It was made some months after the wind-up, was it not?

A. It was an extension of time, that is all.

He also testified as follows:

Q. Was anything said with reference to your guarantying the notes?

A. There was, yes.

Q. Now, when was that said?

A. At the first agreement.

Q. Was there anything said after that?

A. There was not, no.

Q. Nothing?

A. No.

Q. But, as a matter of fact, at the time of the transfer, you did indorse the two notes, plaintiff's exhibit A and B, as appears on the back thereof?

A. Yes, that was according to agreement.

Q. And that was according to this agreement here?

A. Well, it was according to the last agreement of transfer.

Q. According to the last agreement of transfer?

A. Yes.

The defendant Lory also testified that nothing further was said in regard to Lory and Mowery guarantying the note, except the discussion had prior to the execution of the agreement dated January 18th, 1913. It is conceded that the defendants made no objection to signing the guaranty, and no fraud or undue influence is claimed. Appellants were the principal stockholders, as well as officers in a bank financially embarrassed. They were vitally interested in the sale of the interests in such bank. They entered into an agreement whereby the terms of sale were outlined. It is true it was necessary to call a meeting of the stockholders in order to bind the stockholders, and make the transaction that of the corporation. But it is equally true that the

appellants had such control of the corporate stock that it was wholly within their power to carry such agreement into effect by the adoption of proper resolutions at the stockholders' meeting.

The agreement dated February 5, 1913, was executed by the appellants in their capacity as representatives for all of the stockholders of the Farmers & Merchants' Bank. The agreement dated January 18, 1913, while executed in the name of the bank, expressly recited that it was also the agreement of appellants individually. In that agreement they agreed to guarantee payment of certain notes. According to the testimony of Crichton, plaintiff's cashier, the notes involved herein were guaranteed in accordance with such agreement. The agreement dated February 5, 1913, does not pretend to contain any individual undertaking on the part of the appellants. No reference is made to the notes to be guaranteed. There is nothing to indicate that any of the parties deemed the promise on the part of the appellants to guarantee certain notes waived or abandoned. The fact that they were requested to, and did, guarantee a large number of the notes shows clearly that all parties considered the agreement on part of the appellants to guarantee payment of such notes to be in full force and effect.

As already stated, the case was tried to the court without a jury. Under a stipulation between the parties, the court did not rule upon the admissibility of evidence as it was offered, but all evidence was received in the same manner as in equity cases properly triable to the court without a jury. A considerable portion of appellants' brief is devoted to an argument of the proposition that parol evidence was admissible for the purpose of showing that the guaranty signed by the defendants was in reality a guaranty of the Farmers & Merchants' Bank; that they signed their names thereto as officials of such bank, and that it never was the intention of the parties that the appellants should be held responsible individually as guarantors. It is unnecessary for us to pass upon this question. (See however Jones, Commentaries on Ev. § 496.) The findings of the trial court come here with all the presumptions in favor of their correctness, "and with the burden resting upon the party alleging error of demonstrating the existence of such error. He must be able to show this court that such finding is against the preponderance of the testimony, and where the finding is

based upon parol evidence, it will not be disturbed, unless clearly and unquestionably opposed to the preponderance of the testimony." Jasper v. Hazen, 4 N. D. 1, 5, 23 L.R.A. 58, 58 N. W. 454. See also Griffith v. Fox, 32 N. D. 650, 156 N. W. 239, and authorities cited in supplemental opinion on petition for rehearing. We have no hesitancy in holding that the findings of the trial court have ample support in the evidence; such findings are not clearly or at all opposed to the preponderance of the evidence.

Judgment affirmed.