L. R. BAIRD, as Receiver of Farmers & Merchants State Bank of Calio, North Dakota, a Corporation, Appellant, v. NEIL NICHOLSON, John W. David, Henry Schultz, Alex Duncan, Alfred Larson, W. L. Thomas and John Cameron, Respondents.

(235 N. W. 685.)

Opinion filed March 24, 1931.

*Traynor & Traynor,* for appellant.

*Snowfield & Stewart* and *John J. Kehoe,* for respondents.

BURR, J. Suit was brought by the receiver against the defendants on indorsements of promissory notes aggregating, with interest, approximately $40,000. All indorsements are as follows:

"For value received we hereby guarantee the payment of the within note at maturity or at any time thereafter, with interest, as therein specified, and hereby waive protest, due presentment, demand and notice of non-payment thereof; and we hereby waive diligence on the part of the holder thereof in collecting the said note; and consent to any extension of time of payment, or any renewal of this note."

The plaintiff claims these indorsements were made as part of transactions wherein the Farmers and Merchants State Bank of Calio purchased from the Peoples Bank of Calvin the notes in issue.

It is the contention of the defendants that such indorsements were made without consideration and for the accommodation of the Calio bank; and that the directors of the Calio bank were to make a similar indorsement on notes taken over by the Calvin bank from the Calio bank and that they indorsed the Calvin notes accordingly under this agreement, but that the directors of the Calio bank never indorsed their notes and therefore there was a failure of consideration. There were other defenses interposed which we need not discuss.

The case was tried to the court without a jury. During the trial two causes of action were dismissed; judgment of dismissal was entered as to the rest, and the plaintiff appeals.

The court found that the indorsements relied upon in this action were made long after the transfer of the notes and not as a part of the transaction of transfer; that six of the notes involved were sold to the Calio bank four weeks before any indorsement by any of the

defendants and without any of the defendants knowing of the transfer until the time of indorsement; "that none of said guaranty agreements were signed by the defendants with the object of its appearing as an asset for the purpose of public examination of the Calio bank or enabling the Calio bank to pass an examination or misleading or deceiving any persons." And further, "that there is no evidence in the record that the Calio bank was insolvent at any of the times at which the aforesaid guaranty agreements were signed by the defendants, and that the Calio bank was a going banking institution for a long period after the signing of said guaranty agreement;" "that long prior to the making of the guarantees by the defendants, all the notes guaranteed by the defendants were owned by and were the property of the Calio bank and that the defendants merely signed said guaranty at the request of the Calio bank and for the accommodation of the Calio bank and wholly without any consideration whatever and that there was no consideration for said promises or guarantees or any of the same."

There are eighty three specifications of error and a demand for "a review of the entire case and a trial de novo in the supreme court." Sixty nine of the specifications of error deal with alleged errors of the court in the admission or rejection of testimony, and thirteen deal with alleged errors in making certain findings of fact which are specified by number. The other specification of error deals with the order for judgment for the dismissal of plaintiff's action.

Both sides recognize the real issues of the case. These points have been stated by appellant precisely as follows:

"The suit is upon the guaranty agreement signed by the defendants upon the notes described in the complaint. The issue is as to whether or not there was any consideration for the execution of the guaranty agreement. All other issues are incidental to this main issue."

"The defendants were the officers and Board of Directors of the Peoples Bank of Calvin, North Dakota." While this bank was engaged in business the Farmers and Merchants State Bank of Calio was transacting business in a neighboring town.

The Calvin bank closed its doors for the first time in 1923. During the fall and winter of 1923–24 the officers of the bank attempted to reopen it and a circular letter was addressed to all creditors seeking to secure a general agreement for reopening, which letter was accompanied

by blank forms of waiver. However the waiver did not meet with the approval of the state authorities and another attempt was made which resulted in the reopening of the bank. Later in that year it closed its doors for good, as did also the Calio bank.

Prior to the first closing of the Calvin bank the makers of notes sued upon were indebted to the bank; some of the indebtedness originating in the years 1919 and 1920 and some prior thereto. On or about the year 1919 a working arrangement was entered into between the two banks "whereby the Calio bank was to take over excess paper of the Calvin bank and carry it for the Calvin bank," and the Calvin bank offered to take over excess paper of the Calio bank and carry it for that bank. The record does not show that this arrangement between the banks was made in bad faith—it appearing at that time that financial conditions in the neighborhood were flourishing and the indebtednesses were supposed to be reasonable, although growing in extent beyond that each bank could permit an individual debtor to incur.

As indicating the character of the arrangement we quote from exhibit "Y" one of the series of letters in the correspondence between the banks. The cashier of the Calvin bank wrote to the Calio bank telling the latter to draw on the Calvin bank for certain notes but that the Calvin bank will have these "paid or renewed;" to keep certain other notes for a week as by that time they will be settled for. He says also "I will probably send you some to take the place of these in the near future. . . . If you have any notes that you do not care to carry you can send them over to us. . . . If you have any excess loans we will be glad to help you out on them." In the correspondence introduced are other letters containing statements of similar import and in some the cashier says: "I will of course stand behind the deal and see that you get your money." In Ex. "Z, 19" a letter to the Calio bank dated February 13, 1920, the cashier of the Calvin bank says, among other things: ·

"I am enclosing you a statement of one of our patrons and this is a mighty fine statement and I would like to have you take your limit of this. He wants to borrow $12,000.00 on the 1st day of March and I can not handle all of it. If you want to you may send me over some

of your notes and I will make the note direct to you as it might look better to the examiner, but you can suit yourself."

On June 21, 1920 five of the defendants executed to the Calio bank a general guaranty agreement, as follows:

"For value received we hereby guarantee the payment of the notes at maturity, or at any time thereafter or any renewal of the same, with interest at the rate of 8% per annum, until paid, and hereby waive protest, demand and notice of demand and nonpayment, and suit against the makers and consent that the time of payment of these notes may be extended from time to time without affecting our liability thereon." Followed by a long list of notes, including eight notes, the renewals of which are made bases of causes of action in this suit.

After this date much correspondence took place, the cashier of the Calvin bank stating: "I am enclosing the note of . . ." "I will take care of your note first next fall;" "I wish you would return this note;" "I will be having some of the paper you are carrying for us in shape in short order;" "I have been on the run for some time and have this time to ask of you what notes you are contemplating in using with the War Finance," etc., and making other similar expressions.

After the giving of this general guaranty agreement all of the notes held by the Calio bank and which represented the indebtedness involved in this lawsuit were renewed. During the process of the first renewals some of the defendants accompanied a representative of the Calio bank on the visits to the debtors; but claim is made by the defendants that this was merely an accommodation to the representative of the Calio bank.

About six weeks after this rendered assistance the representative of the Calio bank asked the defendants to sign the indorsement on the notes even though the general indorsement had been made—this representative testifying:

"I told Vinje and Nicholson that we would like to have those notes, each one guaranteed by the stockholders separately instead of the guarantee on that one sheet of paper because we wanted to use them as collateral."

In accordance with this desire the directors of the Calvin bank assembled, discussed the situation and the request, and indorsed the notes

separately. It is argued this shows such indorsements were made for the accommodation of the Calio bank as the latter wanted to use the notes "as collateral." It was for the "convenience" of the Calio bank rather than "accommodation." The directors had signed the general guaranty already, and guaranteed the payment of the renewals. It became convenient for the Calio bank to have such guaranty or indorsement showing on the separate notes, hence the request and the agreement.

The representative of the Calio bank testified further that when the indorsements were placed on each note here in issue:

"Mr. Nicholson and Mr. Vinje stated that they were about to open up our bank again and that they would not like to be jumped on at once or interfered with in their opening, if we would sign an agreement to extend for at least a year."

During this time Mr. Nicholson was president and Mr. Vinje cashier of the Calvin bank. Such an agreement was made and thereafter in December of 1923, the directors of the Calio bank formally adopted a resolution or agreement reciting that defendants were indorsers of promissory notes and were seeking to reopen the Calvin bank and that in order not to impede this work the Calio bank, resolved:

"Between the Farmers & Merchants State Bank, Calio, N. Dak., and Neil Nicholson, Alfred Larson, John W. David, John Cameron, Henry Schultz, Alex Duncan and W. L. Thomas, addresses Calvin, N. Dak.

"Whereas, Neil Nicholson, Alfred Larson, John W. David, John Cameron, Henry Schultz, Alex Duncan and W. L. Thomas, are endorsers on certain promissory notes to the Farmers & Merchants State Bank, Calio, N. Dak.

"Whereas, Neil Nicholson, Alfred Larson, John W. David, John Cameron, Henry Schultz, Alex Duncan and W. L. Thomas are Directors of the Peoples Bank of Calvin, N. Dak., and being that the Peoples Bank, Calvin, N. Dak., is now being reorganized for its reopening, and not to impede its functioning after its reopening, the Farmers & Merchants State Bank, Calio, N. Dak.

"RESOLVES, not to take any action whatsoever, against the endorsers of such notes they are carrying with the endorsement of Neil Nicholson, Alfred Larson, John W. David, John Cameron, Henry

Schultz, Alex Duncan and W. L. Thomas for the period of one year, with the privilege of renewing for another year, if conditions permit by the makers of such notes, this agreement is binding in case such notes being hypothecated.

"This agreement shall not, however, release the makers of such notes, in making payments or retiring such notes within periods as may be hereafter.

"Dated this 28th day of December, 1923."

On March 13, 1924 the Calio bank issued this certificate:

"Calio, N. Dak., March 13th, 1924

"TO WHOM IT MAY CONCERN:

"This is to certify that we do not hold the Peoples Bank, Calvin, N. Dak., liable on certain notes that we have bought from them during the past, but hold the directors individually liable.

"Yours very truly,
"Farmers & Merchants State Bank,
"Calio, N. Dak."
"[Signed:] M. J. Pung, Cashier."

However, this certificate seems to have been issued without any notice to defendants or any knowledge thereof or agreement thereto by them, and therefore the provision regarding holding the directors was unknown.

An action properly triable to a jury "is not triable de novo, in this court on appeal" even if not tried to a jury in the court below. American Case & Register Co. v. Boyd, 22 N. D. 166, 133 N. W. 65; State Bank v. Maier, 34 N. D. 259, 158 N. W. 346; Botnen v. Eckre, 41 N. D. 514, 171 N. W. 95; Lark Equity Exch. v. Jones, 42 N. D. 145, 171 N. W. 863; Erickson v. Backman, 49 N. D. 277, 191 N. W. 343; Lloyd Mortg. Co. v. Davis, 51 N. D. 336, 36 A.L.R. 465, 199 N. W. 869; Anderson v. Osborne-McMillan Elevator Co. 51 N. D. 730, 200 N. W. 905. And this applies even though the jury was specifically waived and the case tried to the court. Novak v. Lovin, 33 N. D. 424, 157 N. W. 297.

These decisions are based upon the provisions of § 7846 of the Code which expressly exempts from trial de novo in the Supreme Court "actions or proceedings triable with a jury." This being a case triable

to a jury the findings of the district court "are presumed to be correct, and where such findings are based on parol evidence they will not be disturbed unless shown to be clearly opposed to the preponderance of the evidence." Anderson v. Resler, 57 N. D. 655, 664, 223 N. W. 707. The "burden of specifying and showing error" is on the appellant "and the review on appeal is limited to the errors specified." Baird v. First Nat. Bank, ante, 286, 234 N. W. 71. See also State Bank v. Maier, 34 N. D. 259, 158 N. W. 346, supra; Botnen v. Eckre, 41 N. D. 514, 171 N. W. 95; and Lake Equity Exch. v. Jones, 42 N. D. 145, 171 N. W. 863, supra.

The specifications of error allege that the finding of the court, to the effect that the execution of the guaranty agreement and the endorsements, "was no part of the transactions which resulted in the acquisition of said notes by the Calio bank and was subsequent to and independent of the Calio bank acquiring such notes," and that the execution of said agreement and endorsements was entirely without consideration, "is in direct contradiction of the clear and undisputed evidence." These specifications further alleged that the findings of the court to the effect that the signing of these guaranty agreements and of the endorsements was made by the defendants for the sole accommodation of the Calio bank "does not state the whole truth and fails to state the fact proven by the evidence that there was a consideration to the defendants in an extension of time and forbearance in prosecution of the claims, and a further consideration in the release of the Calvin bank from the obligations which the bank had assumed to the Calio bank, and other items of consideration that entered into said arrangement."

We therefore examine the evidence to see whether these specifications be correct; and if there is substantial evidence upholding the findings of the court, then the judgment must be affirmed for we do not try the case de novo. However, if the appellant shows us there is no evidence sustaining these findings it is clear the decision of the trial court must be wrong.

The undisputed evidence shows that independent of whether the general guaranty had consideration for its existence at the time it was signed, in the sense of any prejudice suffered by the Calio bank at that time or benefit conferred on the signers proceeding from the fact of

signature, there is consideration in the subsequent acts of the Calio bank giving makers of the notes further time for payment, by way of renewal, and this in reliance upon the guaranty agreement.

The evidence shows that the Calio bank had possession of the notes from the Calvin bank for some time prior to the execution of this guaranty agreement. There may be some dispute as to whether the signing of the general guaranty was an afterthought, or whether it was the result of an arrangement between the bank whereby one bank would carry for the other excess loans and the directors in each bank guarantee the paper transferred from their bank. Without reference to this issue it is clear that the general guaranty agreement covered renewals of the notes sold by the Calvin bank to the Calio bank. It is so stated in the agreement. In addition the defendants themselves testify that they executed this general guaranty because the directors of the other bank were to do the same for the paper taken from their bank. The fact stands undisputed that all of the notes described in the cause of action remaining undismissed were included in the general guaranty and these notes were all renewed after this general guaranty was given. In fact some of the notes have been renewed twice. By renewal the Calio bank suffered detriment, and refrained from attempts to collect. The indorsement of the individual notes received as renewals was merely an acknowledgment of the general guaranty already given. The promise relied upon as consideration for the indorsements need not be made nor given at the time of the indorsements. If the indorsements be made in pursuance of a previous understanding and agreement there is sufficient consideration. There need not be any new consideration, for promisors may bind themselves by "merging an oral agreement into a written contract, and cannot escape liability merely because the consideration had passed to the promisee prior to the execution of the written contract." Noyes v. Young, 32 Mont. 226, 79 Pac. 1063; Fearnley v. Fearnley, 44 Colo. 417, 98 Pac. 819, see rule as set forth in 13 C. J. 362. This indorsement did not differ in any material particular from the general guaranty and some of the defendants testify that they indorsed the individual notes because they had already given the guaranty. It is the contention of the defendants that a part of the consideration for the entering into a general guaranty agreement and the separate indorsements made

thereunder was the agreement on the part of the cashier of the Calio bank to have the directors of that bank guarantee payment of and indorse notes belonging to the Calio bank taken over by the Calvin bank. During the trial of the case the defendants declared they would be able to prove failure on the part of the directors of the Calio bank to make such indorsements, and thus a partial failure of consideration. However no proof of any such failure was furnished and therefore there is nothing to show this alleged failure of consideration set up as an additional defense. The contract of indorsement, in itself, presupposes a consideration, and failure is an affirmative defense. Comp. Laws, §§ 5881, 5882, 6209.

It is clear from the record therefore there is ample evidence to show consideration for the general guaranty and indorsements and no failure of consideration has been shown.

We need not dwell upon the specifications of error relating to the admission or rejection of testimony. The real issue being that of consideration, and no failure having been shown the judgment of the lower court is reversed and a new trial is granted.

CHRISTIANSON, Ch. J., and NUESSLE, BIRDZELL, and BURKE, JJ., concur.