## STATE v. BANKS et al.

### (138 N. W. 973.)

**Appeal — findings of fact by trial court — weight.**

1. In a law case wherein a jury is waived, the findings of the trial court on questions of fact are entitled to the same weight on appeal as given the verdict of a jury on such questions.

**Appeal — review of findings of fact.**

2. On the trial of a cause at law by the court, findings of fact sustained by substantial evidence will not be disturbed on appeal.

**Action on bail bond — sufficiency of evidence to sustain finding.**

3. Evidence examined in a case brought by the state to recover on a bail bond, and *held,* that a finding that the bondsmen did not arrest, surrender, deliver, or commit the defendant to the custody of the court or proper officer, as required by law, is sustained by substantial evidence.

Opinion filed November 20, 1912.

Appeal by defendants from a judgment of the District Court for Ransom County, *Allen,* J., in plaintiff's favor in an action to recover on a bail bond.

Affirmed.

*Rourke & Kvello* and *E. F. Hull,* for appellants.
*Curtis & Curtis,* for respondent.

SPAULDING, Ch. J.   This is an action to recover on a forfeited bail bond given before trial of the principal on the charge of having committed a misdemeanor.   A jury was waived and trial had by the court.   The court found as a fact that the defendants in this case did not arrest, surrender, deliver, or commit the defendant in the criminal case to the custody of the court or proper officer, as required by law.   A judgment was entered against the defendant bondsmen.

It may be conceded that the evidence on the question of surrender is in conflict, but it is elementary that if such is the case, and there is any substantial evidence to sustain the finding of the court on the facts, such finding cannot be reversed by this court.   We are satisfied from an examination of the record that there is sufficient evidence to justify and sustain the finding, above referred to, by the trial court. The accused, one Christianson, was held to answer on the charge of maintaining a common nuisance on the 15th day of October, 1909; he was released on giving an undertaking for $500, with appellants as sureties.   The terms of the undertaking are fixed by the Code, and are: "That the above-named Samuel Christianson will appear and answer to the charge above mentioned, in whatever court it may be presented, and will, at all times, hold himself amenable to the orders and process of the court, *and if convicted will appear for judgment and render himself in execution thereof;* or if he fails to perform either of these conditions, that he will pay to the state of North Dakota the sum of five hundred and no hundredths dollars."

The evidence shows that he was tried and convicted at Lisbon, the county seat of Ransom county, on the 17th day of November, 1909; and that appellant James K. Banks was in attendance during the trial, but left before the jury returned a verdict.   He testified that the next morning he was informed of the verdict of guilty, and in the afternoon of the same day Christianson came to his office in Sheldon, and that thereupon he called up Curtis, state's attorney, by telephone, and asked him what Christianson was doing at Sheldon; that Curtis replied that he was out on bonds, and that if he did not want him there to bring him back; that he informed Curtis that he

did not wish to carry him back unless it was necessary, whereupon Curtis replied that he would not be wanted for three or four days; that during the evening of the same day he received a telephone call from Curtis telling him he better send Christianson down in the morning; that he reiterated that he did not want to unless it was necessary, and he was informed that he had better do it, because the judge had decided that he wanted him in the morning; and that he was told by Curtis to take him over to the train and deliver him to the sheriff, who would be on the train in the morning.

That he looked for Chistianson in the morning and learned that he was out in the country a short distance, at work; that he sent for him; that at train time he did not see anything of him; that he went to the train, met the sheriff inside a car, and told him that Curtis had told him to surrender Christianson to him; that he had agreed to do so, but that he was out in the country and he had sent for him. While he was explaining to the sheriff, Christianson came in the car door, the train began to more, and he said to the sheriff: "Here he is now," and left the sheriff and Christianson standing talking, while he jumped off the train; that he did not know what became of Christianson; that he did not bring Christianson to the sheriff's office, nor before any court, nor any officer excepting the sheriff, to whom he delivered him; that he had a talk with Curtis on the afternoon of the 18th, but Curtis did not ask him if he delivered Christianson to the sheriff in discharge of his bond; and that deputy state's attorney Dwyre did not ask him, so far as he recollected, if he had surrendered Christianson to the sheriff in discharge of his bond.

On redirect examination he testified that he surrendered him for the purpose of being relieved from his bond, and did so in pursuance of the directions of the state's attorney, who said, in substance, that if he desired to be released, he could surrender the defendant to the sheriff.

The sheriff testified that he met Banks and Christianson at the train at Sheldon when he was returning from Fargo with a prisoner. He then testified in substance to the conversation with Banks, the same as Banks had testified, and that he informed Banks that he would take him down to Lisbon, but that Banks did not use the word "surrender" in the conversation with him, but did bring the prisoner

and deliver him to him; that he understood he was to bring him to Lisbon and was responsible for him until he got there. He found other matters to take his attention when he reached Lisbon, and he told Conboy, his deputy, to take the prisoner to Curtis, who would tell him what to do; that he did not know what the situation was with Christianson, and for that reason told him to take him to the state's attorney.

Conboy testified that the sheriff told him to take the prisoner to the state's attorney; that he took him to the courthouse, he believed into the court room; that Curtis and Dwyre were there at the time, and Curtis said to let him go until after dinner, which he did, and never saw him afterwards. That he did not remember Curtis asking him if Christianson had been surrendered by his bondsmen, and telling him that if he had not been, they had nothing to do with him; that he did not think such a conversation took place.

Curtis, the state's attorney, testified about being called on the telephone by Banks, about telling him that he could surrender Christianson to the sheriff at the train in discharge of the bond, or that he could take such steps as he wanted to pursue, but that he did not tell him he wanted him there; that he called him up as a matter of accommodation, so Banks could save the expense of bringing him down; that when Conboy brought him into the court room he asked Conboy if Christianson was surrendered in exoneration of his bond, and was informed by Conboy that he was not; that he told Conboy that they then had nothing to do with him,—he was out on his bond; that later in the day he had a conversation with Banks in which he asked him particularly if, when he took Christianson to the train, he turned him over to the sheriff in discharge of his bond, and that Banks said, no; that Dwyre had a conversation over the telephone which he heard one end of, and asked Banks the same thing; that he did not tell the deputy sheriff at any time to turn him loose.

Dwyre testified as to his telephone conversation with Banks, and hearing Curtis's conversation with him; that to the best of his recollection Curtis asked Banks if he surrendered Christianson in discharge of his bail; that his best recollection was that he did not himself ask Banks that question, but he testified he did ask him if he wanted him put in jail, and he said, no.

Assuming that a surrender of the defendant after verdict, but before sentence, could be made by the bondsmen to the sheriff, outside of court, without any arrest by anyone, there appears to be a conflict in the evidence as to whether Banks did surrender him in exoneration of his bond. His intent is an important element in the consideration of this question, and in determining what his intent was the question testified to by Curtis, and the answer thereto as he says it was given by Banks, that he did not turn him over to the sheriff in discharge of his bond, and the answer to Dwyre, that he did not want him put in jail, were material elements; and we think, taken altogether, the evidence is sufficient to sustain the finding of the court on this question of fact, all the time assuming that a surrender could be made as we have said, in that manner. It was evident that the court did not attach much weight to the statement by Banks that he surrendered the prisoner to the sheriff for the purpose of being relieved from his bond, and that the evidence may be construed as contended by the state, to the effect that Banks simply placed him under the oversight of the sheriff, the same as he might have asked any other person to keep an eye on him, to save himself the trouble of going to Lisbon. Our assumption that a surrender could be made outside of court or in the manner indicated, and the bondsmen thereby discharged without action of the court, if such had been the intent of the bondsmen, is only for the purpose of the case, and is not intended as even an intimation that it could be so done. The statute governing the surrender of a defendant by bail is as follows:

Section 10266, Rev. Codes of 1905: "Any person charged with a public offense and admitted to bail may be arrested by his bail at any time before they are finally discharged, and at any place within the state; or by a written authority indorsed on a certified copy of the undertaking of bail, they may empower any officer or person of suitable age and discretion to do so, and he may be surrendered and delivered to the proper sheriff or other officer, before any court, judge, or magistrate having the requisite jurisdiction in the case; and at the request of such bail, the court, judge, or magistrate shall recommit the party so arrested to the custody of the sheriff or other officer, and indorse on the undertaking of bail, or certified copy thereof, after notice of the state's attorney, and if no cause to the contrary appears,

the discharge and exoneration of such bail; and the party so committed shall be held in custody until discharged by due course of law."

Section 10267: "If, without sufficient excuse, any person who has given an undertaking in a criminal action or proceeding neglects to appear according to the terms or conditions of the same, either as a witness or for hearing, arraignment, trial, or judgment, or upon any other occasion when his presence in court or before the magistrate may be lawfully required, or to surrender himself in execution of the judgment, the court must direct the matters to be entered upon its minutes and the undertaking of bail, or the money deposited instead of bail, as the case may be, is and shall be thereupon declared forfeited; but if, at any time before the final adjournment of the court, such person or his bail appears and satisfactorily excuses his neglect, the court may direct the forfeiture to be discharged upon such terms as may be just. After the forfeiture, the state's attorney must proceed with all due diligence, by action against the bail jointly or severally in his discretion, upon the undertaking so forfeited. If money instead of bail is so forfeited, the clerk of the court, or other officer with whom it is deposited, must immediately after the final adjournment, or at such time as the court may direct, pay over the money deposited to the county treasurer."

Section 10269. "No action brought on an undertaking of bail is barred or defeated, nor shall judgment thereon be arrested by reason of any neglect or omission to note or record the default of any principal or surety at the term or session when such default happened, nor by reason of any defect in the form of the undertaking, if it sufficiently appears, from the tenor thereof, at what court the party or witness was bound to appear, and that the court or magistrate before whom it was taken was authorized and required to take the same."

Section 10270: "Any surety on such undertaking may be discharged from further liability thereon, at any time before final judgment against him, by surrendering to the court or proper officer the principal in such undertaking, if such principal is a defendant in a criminal action, or if such principal is held as a witness in such action and it has not been tried; or by paying to the clerk of the court the amount specified in such undertaking, with costs, as the court may direct."

The last two sections quoted were enacted subsequent to the enactment of the preceding sections.

The judgment is affirmed.

Goss, J. (specially concurring). The statement of facts in the main opinion is very general and tends to conceal what might be termed the equities of the defendants. All facts and circumstances in evidence, considered together, disclose that the defendants fully sensed their responsibility as bail, and sought to fulfill the spirit of the law and discharge themselves as bail. But notwithstanding their endeavors in such particular, the evidence is somewhat indefinite on the fact of the surrender to the sheriff. The delivery of the prisoner was undoubtedly intended by the defendants to have been made in exoneration of bail, but a question of fact exists as to whether the sheriff so received the prisoner, the delivery having been hastily made at the train with no time for extended inquiry or explanation. In fact, the sheriff testifies concerning such surrender that "he didn't exactly know what the situation was with Christianson, and for that reason" sent him to the state's attorney. As to who was negligent in the subsequent release resulting in the escape of the prisoner is immaterial. The fact remains that the evidence raises a conflict on facts as to whether the sheriff understandingly received Christianson from Banks in discharge and exoneration of bail, or whether he received him into his custody acting in law as an agent for Banks in conveying the prisoner previously arrested by bail to the county seat to be thereafter remanded to custody, with exoneration of bail to be entered, prior to which the release and escape occurred. On this question of fact the findings of the trial court, contrary to the contention of the defendants, is conclusive; and upon such ground alone concurrence is had in the decision announced by the majority opinion, which, by the way, meets with the concurrence of all members of the court solely on facts, even though the contrary might be the inference from the quotations in the opinion of the various statutory provisions as to bail, none of which are interpreted or construed or passed upon in the opinion as the writer understands said holding.