In this case the plaintiff seeks to foreclose a certain chattel mortgage admittedly given it by the defendants, Henry Weiss and Magdalena Weiss, his wife. The real issue involved is whether this chattel mortgage was obtained by fraud. Both sides admit that this is the real issue. Respondents say in their brief "at the very outset, appellant asserts, in substance, that there is one and only one issue in the case at bar, and that is whether or not the plaintiff bank, as an inducement to the defendants Weiss to execute the mortgage in question, made certain promises as claimed by defendants, and, if they did, in that event, there is fraud and the said mortgages are a nullity. To this we agree, — the whole controversy, then, resolves itself into an issue of fact."
The facts leading up to the incidents surrounding the taking of the mortgage are practically undisputed. Whatever contest there is is merely perfunctory. So far as the law of the case is concerned the parties are in agreement. There are practically no citations, for each side admits the trial court properly placed the burden of proof, required the proper quantum of proof, and, as appellant says in its brief, "since the whole suit hinges on facts, rather than on points of law, we have omitted any citations through the whole of our argument." He follows *Page 885 
this with a mere statement of law calling the attention of the court to the presumptions which apply in this case.
It seems that prior to October 6, 1923, the defendants Weiss were indebted to the plaintiff bank upon long standing accounts and gave their promissory note for $3,200, dated October 6, 1923, due October 1, 1924, with interest at ten per cent. At that time the defendant, Henry Weiss, was the owner in fee of the N.E. 1/4 and the S.W. 1/4 of section 23, township 148, range 71, in Wells county and had purchased the N.W. 1/4 of the same section from his father under a contract for deed, and by the terms of this contract was to deliver one half of all of the crops produced. Henry Weiss was a man of about fifty-five years of age, a farmer living on this land with his family consisting of his wife, Magdalena Weiss and some ten children, seven of whom were living at home. The land which he owned in fee was effectually covered by six mortgages; — first, to the Union Central Life Insurance Company for $4,000, second, to the same company for $2,500, third, a commission mortgage for $425, fourth, to T.L. Beiseker for $4,000, fifth to T.L. Quarve for $2,494.45, sixth, to the plaintiff for $4,000. Interest had been paid on some of these mortgages and possibly some small payments on the commission mortgages; but the amount due in the aggregate had grown because of interest. For instance, the Beiseker mortgage "had climbed to the sum of $7,000 in round figures." Besides this real estate which the defendants Weiss had so thoroughly and impartially plastered, they owned considerable personal property consisting of a large number of cattle, horses and the usual amount of farm equipment. The greater part of this was already mortgaged to the plaintiff bank and to the defendant bank. To secure this indebtedness, the plaintiff bank had obtained a mortgage on the crop for 1922 but had no crop mortgage for 1923. At the time they executed the note for $3,200, referred to before, defendants Weiss executed a note to the plaintiff for $422.75 due October 1, 1924, with interest at ten per cent and as security for the payment of these two notes, plaintiff alleges, the defendants Weiss executed a chattel mortgage upon all of their personal property including hogs and hens and "all small grains, potatoes, corn, corn fodder, grass and hay (wild and tame) and seed therefrom, clover, alfalfa and millet hay, and the seed therefrom, which may have been or may hereinafter be sown, grown, planted or harvested *Page 886 
during the year 1924, on the N. half and the S.W. 1/4 of section 23, etc." Default having been made in the payment of these notes, the plaintiff seized the crop in the fall of 1924. The defendant Wells county State Bank obtained a chattel mortgage upon this same personal property on September 30, 1924, to secure the sum of $7,018.64, and under this mortgage claimed the crop alleging that plaintiff's mortgage had been obtained by fraud. In addition to this we find there were two other actions pending affecting this same crop. Two sons of the defendant Henry Weiss had filed labor liens against this crop, aggregating the sum of $406, which liens had been assigned to the plaintiff bank, and were the subject of an action to foreclose. There was also an action brought to foreclose a thresher's lien for some $475 held by one Rudel. By stipulation of the parties disposition was made of these actions on the liens so that the real issue centers around the chattel mortgage obtained by the plaintiff.
The defendants, while admitting the execution of the notes sued upon and the chattel mortgages sought to be foreclosed, allege that the same were given under a state of facts substantially as follows: — that the Wells county State Bank was threatening to foreclose its mortgage upon the real estate of the defendants Weiss and the plaintiff bank was insisting upon payment of the indebtedness due it, or partial payment and more security; that the defendants informed the plaintiff that they had to reserve some of their security to satisfy the defendant bank and prevent a foreclosure of their homestead, and that thereupon plaintiff bank agreed with the defendants to take up and take over all of the indebtedness due to the said defendant bank and carry the defendants on their indebtedness due the plaintiff for another year "provided these defendants would give to the plaintiff their chattel mortgage upon all of the chattels and crops — and also on other crops and other personal property;" that believing these promises and relying thereon they executed the notes and chattel mortgages sued upon and "another note and chattel mortgage in the sum of $697.20;" that the plaintiff bank after receiving and accepting these notes and mortgages neglected and refused and failed to take up the indebtedness due the defendant bank and the defendant bank foreclosed its mortgage against the homestead of these defendants and by reason of the plaintiff taking the crop of 1924 they were unable to redeem their real property. The defendants *Page 887 
Weiss asked for a rescission of the contract set forth in the notes and chattel mortgage. As usual in such cases there is a sharp conflict in the testimony relative to the situation surrounding the giving of these notes and mortgages. The trial court was called upon to determine the weight of the evidence, and the credence to be given each witness. The court decided in favor of the defendants and held that the notes and mortgages had been obtained by fraud, that defendants had the right to rescind the same and ordered the return of the property to the defendants. The plaintiff appeals and demands a trial de novo. In such case the findings of the trial court are entitled to appreciable weight. This is a settled rule in our state and it is not necessary to cite decisions in support thereof other than Doyle v. Doyle, 52 N.D. 380, 202 N.W. 863.
Eight witnesses testified in the case, including the register of deeds who identified some instruments, and the sheriff who seized the property. The remaining witnesses, with the exception of Henry Weiss, were connected with the contending banks as officers and employees, hence practically all of the witnesses were more or less affected by the case. The defendant Henry Weiss, testified to the effect that he met the president of the plaintiff bank, H. Ingvaldson, and in a conversation was asked "What kind of arrangements did you make with Beiseker?" (president of the defendant bank), and after stating he had made no arrangements was asked if he had given them a crop mortgage and he answered "No." He claims he told Mr. Ingvaldson that Beiseker would foreclose his mortgage if he did not get his pay and that Mr. Ingvaldson said "You give me a crop mortgage and a chattel mortgage and I will fix it up with Mr. Beiseker. I will take that mortgage up for you over at Mr. Beiseker's." He further testified that the next day one Sam A. Bye, at that time in the employ of the plaintiff bank as cashier came out to his place to obtain the description of the personal property and before the signing of the chattel mortgages said to the plaintiff in effect "give us everything in our mortgage and we will protect you." And when asked if he was sure whether the plaintiff would take up the Beiseker mortgage said, "Sure, we have to take that up to protect you and ourselves." The witness claims that by reason of these and similar statements he was induced to sign the chattel mortgage, that he believed the statements, relied thereon, *Page 888 
and would not have executed the mortgage were it not for those statements. The defendants Ingvaldson and Bye deny making any such statements. Witness Bye says the only promise he made was "that he would renew up his paper and notes and extend it for another year on the crop chattel renewal." With Mr. Bye, on the Weiss farm at the time of the taking of the description, was an employee of the plaintiff bank by the name of Rassibo. He denied that anything was said by Mr. Bye about taking up the Beiseker indebtedness. Mr. Ingvaldson testified at length stating that while there was a conversation between him and Mr. Weiss regarding the indebtedness due from Weiss to Mr. Beiseker, or his bank, and that Weiss asked him about taking up the Beiseker indebtedness he told Weiss "that it would be absolutely impossible. I told him that he did not have enough security so that we could take care of it." These quotations illustrate the nature of the testimony of these witnesses. The defendant placed Mr. Beiseker on the stand and he testified to having several conversations with Mr. Ingvaldson relative to the Weiss indebtedness. He stated the first conversation happened somewhere about the tenth of October, 1923, and at that time he called Mr. Ingvaldson's attention to the chattel mortgage that had gone on record and said to him, "Weiss promised not to give anybody a mortgage besides us." And that Mr. Ingvaldson replied to this as follows: "Well — yes, I know it. I am going to take up your matter. I would have done it before this but I have been a little busy. I am going away for a few days. Let's wait for a few days and I will take it up." He claims he waited for some time and then in the latter part of December or the first of January, after beginning foreclosure, he met Mr. Ingvaldson in the plaintiff bank and the witness Ingvaldson said in effect; "I see you foreclosed on the Weiss matter; I am sorry because it is going to make a little more for us to take up, for us to pay." Mr. Ingvaldson denies having these conversations and as the witness Beiseker claims there was no one present when they were had, it became a question of veracity between these two men. For instance, while admitting there was a conversation with Mr. Beiseker regarding the foreclosure of the defendant bank's mortgage, the witness Ingvaldson says the statement made by him was as follows referring to the foreclosure, "It is too bad that Mr. Weiss will have to lose his farm, but he is so heavily involved I cannot see how in the world he can work *Page 889 
out." He says Mr. Beiseker wanted him to take up the claim but he refused. These were the main witnesses on the issue.
The plaintiff contends the testimony of the witness Beiseker was not admissible because these conversations were not had in the presence of Weiss and therefore could not have been an inducing cause for the execution of the note and mortgages and were immaterial and hearsay. We are of the opinion the testimony was admissible. There was a conflict between the parties as to what was said and done at the time the mortgage was executed; what promises and inducements were made; and what agreement, if any, with reference to the taking up of the Beiseker mortgage. If the witness Ingvaldson thereafter stated that he intended to take it up, it would be corroborative of the statement of Weiss. It would be a statement by the defendant Ingvaldson against interest made at a time other than the time of the execution and would have a bearing upon the case.
After hearing all of the testimony the trial court decided that the defendants had sustained the burden of proof. He had the witnesses before him, heard their testimony, saw their demeanor, and made his findings. There is ample testimony to sustain his view. By believing the witness Weiss and the witness Beiseker the findings have ample support. If he had believed the witness Ingvaldson and the witness Bye his findings would have had ample support. The plaintiff's brief is devoted, quite extensively, to reasoning as to the probabilities. This is pertinent. The argument is urged that the plaintiff bank would not be taking up a $7,000 mortgage merely because it was getting a crop mortgage for $3,600, on crop yet to be sowed; that it already had a chattel mortgage on practically all of the personal property, other than the crop. The evidence shows also that plaintiff, during the season of 1924 advanced some $241 to defendant Weiss to assist him in taking care of the crop, being required to make advances under the terms of the mortgage; and that defendant bank, after foreclosing its mortgage, sold the land back to the defendants Weiss for the amount due on the foreclosure sale. Plaintiff argues that application for and acceptance of such advances is an indication defendant Weiss did not consider plaintiff bound to take up the Beiseker mortgage but is rather proof the mortgage was given merely as additional security; and that the action of the defendant bank in foreclosing its mortgage and then *Page 890 
selling the land back to the defendants Weiss for the exact amount due on the sale is evidence of an attempt to force the plaintiff to take up the mortgage and of a conspiracy between the defendants to thus compel the plaintiff rather than proof of any genuine desire to foreclose. In other words that the threat to foreclose and the action in foreclosing were all part of a scheme to compel the plaintiff to take up the mortgage or lose its real estate security. The plaintiff further agrees that it is ridiculous to believe a business man of the caliber of the president of the plaintiff bank would undertake any such deal as here claimed. Defendants counter by claiming that plaintiff bank had the sixth mortgage on this land, that the Beiseker mortgage was the fourth, that by taking up the Beiseker mortgage it would get not only the Beiseker mortgage for $7,000 but this extra $3,600 and thus be enabled to strengthen its own sixth mortgage on the land, that by accepting advances Weiss merely showed his reliance on the promise of plaintiff's agents; that by its threat to foreclose the defendant bank was merely protecting itself because this debt was increasing daily and that by selling back they would be giving to the defendants land free of the two mortgages which were inferior. These arguments were all addressed to the reasonableness of the case, were weighed by the trial court and are presented here. We cannot say that the weight of the evidence does not sustain the findings. The witnesses are apparently of equal credence, so far as the cold record shows. The actions, hesitancy, appearance and other evidences of the demeanor of the witnesses perforce cannot be shown by the record. Each side appeals confidently to this. There is no inherent improbability in any of the testimony; therefore we do not feel like disturbing the judgment of the lower court. It is therefore affirmed.
BIRDZELL, Ch. J., and NUESSLE, BURKE, and CHRISTIANSON, JJ., concur. *Page 891