FRED ANDERSEN, Appellant, v. ADELE C. RESLER, T. J. Dougherty, The First National Bank of Starkweather, a Corporation, and Arvid C. Sorenson and Alfred Sorenson, Co-partners under the firm name and style of Sorenson Brothers, Respondents.

(223 N. W. 707.)

Opinion filed February 19, 1929.

*Sinness & Duffy,* for appellant.

*Traynor & Traynor,* for respondents.

BURR, J. The plaintiff seeks to foreclose a certain real estate mort-
gage given by Homer Resler and Adele C. Resler, his wife, to one

Tiemeyer in November 1919 to secure the payment of $6,000 with interest at 6%, due and payable November, 1924. The mortgage was not paid when due and it is the claim of the plaintiff that on September 30th, 1927 the said T. assigned and transferred the mortgage and note to him, that he filed this assignment for record, took the necessary steps to begin foreclosure proceedings, and brought this action.

The defendant Adele C. Resler answered admitting the execution of the note but alleged that before the assignment of the said mortgage to the plaintiff there was an accord and satisfaction entered into between her and the said T. regarding said note and mortgage and it was mutually agreed between them that T. would "accept $5,000 in full settlement and in satisfaction of said note and mortgage" and that she "paid the full amount of said $5,000 . . . and then and there became the owner of the said promissory note and entitled to the cancellation thereof and the satisfaction of said mortgage referred to in the complaint herein." She alleges also that the plaintiff knew of these dealings before he got the assignment of the mortgage and by fraudulent representations induced T. to give the assignment and stated to T. that the defendant had refused to pay the amount agreed upon.

The defendant Dougherty and the First National Bank of Starkweather answer jointly and to the same effect as the defendant Resler.

The plaintiff replies admitting that there was a proposition and an offer made by T. to the defendant Resler offering to accept from the said Resler "in satisfaction of the note and mortgage mentioned in plaintiff's complaint in the sum of $5,000 . . . and that she rejected such offer." The plaintiff further alleges that the defendant R. told him she was not going to take this offer and thereupon he purchased the note and mortgage from T. and received the assignment.

The court made findings of fact and conclusions of law favorable to the defendants and held in effect that Mrs. Resler had accepted the proposition made by T. and had complied with it, had paid her money which had been received and retained by T. through his agent Dougherty, that the plaintiff had fraudulently received an assignment of the mortgage, had deceived and misled Mrs. Resler, and that she was therefore entitled to a cancellation of the mortgage. Plaintiff appeals and demands a trial de novo.

There are four specifications of error to the effect the court erred

in the making of nine of the findings of fact; the court erred in the making of four of the conclusions of law; the court erred in ordering judgment for the defendants; and the court erred in not rendering judgment in favor of the plaintiff.

The contested issues of fact are limited in number. One John Tiemeyer, living in Missouri, was the holder of the mortgage involved. The defendant Dougherty was the President of the First National Bank of Starkweather. Homer Resler the husband of the defendant R. was the owner of the land in question and had sold the same under contract to two brothers, co-partners, known as Sorenson Brothers who were to pay the indebtedness as part of the purchase price but failed to do so. T. sent the note to D. and appointed him his agent to collect the same and to look after the matter. In the meantime Homer Resler had died.

Letters which passed between T. and D. (Ex. "K," "N," "O," etc.) show that heretofore an extension of time had been given the Reslers by T. in order that Reslers might sell the land to Sorensons and the latter had agreed to turn over to T. half the crop, and T. was looking to them for the payment of the interest, taxes, etc. In Ex. "K" written as early as March 21, 1927, he said:

"About the Sorenson Brothers, I hardly know what to do at present, as would like to have a little more data on that proposition. If I remember right I wrote you if they would keep up the taxes on that land and pay the interest, I would be willing to carry them for another year, but it seems as if they do not do anything about it."

On May 23, 1927, T. wrote to D. regarding Mrs. R. as follows: (Exhibit 10)

". . . I have your letter of the 4/29/27 before me stating that you had been down to see the Sorenson Bros. in regard to that loan. I think I will give them time until next fall to settle up this matter . . . I see by the "Times" that Mrs. Resler is back from California. You may tell her that I will sell her my note, Principal $6,000.00 and accrued interest which is at present about $500.00 for $5,000.00 Five Thousand dollars cash. See how it strikes her. . . ."

Mrs. R. construed this as a discount of $1,000 only. On Sept. 17th he again wrote to D. as follows: (Exhibit C.)

"Am writing you a few lines to find out how things are going up

there. I understand you have a fair crop up there this season, and would like to know what chance there is of the "Sorenson Bros." paying off that note and mortgage which I hold against them. Will state that my offer still holds good I made Mrs. Resler viz.: I will take $5,000.00 Five Thousand dollars cash for that and waive all the unpaid interest but I must have cash and want action immediately. If Mrs. Resler does not care to take this offer possibly the Sorenson Broth ers would be able to take it. . . ."

This letter was received Sept. 21st but D. says he did not show it to Mrs. R. at that time because the plaintiff said he had talked with her "and . . . that Mrs. Resler said she 'would not take up this offer.' " However he testifies that he arranged a meeting between Mrs. R. and Sorenson Bros. as T. requested. He further testifies Mrs. R. came into the bank next day and in conversation said she knew nothing of the offer of Sept. 17th. Andersen had not told her had "never said a word about the renewing of that proposition." He then showed her the letter, she accepted the offer and the next day paid over the money.

It seems the plaintiff, now a resident of Minneapolis, had been a former resident of Starkweather, and was a friend of T. and while visiting T. in the winter of 1926 learned about this pending deal. In September the plaintiff came into the bank and told D. he was helping T. in the collection of his claim and D. then let him see the correspondence regarding these offers, and says that Andersen offered to go over and see Mrs. R. and see whether she would accept the proposition and A. reported to D. that he told her about it but she says Andersen did not.

On September 13th the plaintiff wrote to T. saying: (Exhibit A)

"I have been looking around to see if I could get Mrs. Resler to assign her interest in this year's crop so that you would get at least the larger portion of your delinquent interest paid but this morning she refused to do so although last evening she promised. It looks to me that she is trying to get all she can out of the land and then try to work you for a discount on top of it. . . . I am writing you to inquire if you would give me the first chance at any offer you have to make on this deal. . . ."

On Sept. 18th T. replied saying: (Exhibit I.)

". . . I have written to Tom Dougherty in regard to that mort-

gage. . . . As you know, I never withdrew that offer I made her last spring, so she would still have a right to take me up, but rest assured I will give you first chance if she turns the offer down. It seems as tho Homer Resler sold that land on the crop payment plan subject, of course, to the mortgage that the land carried. . . ."

D. testified the plaintiff told him he was a friend of the mortgagee and as such was shown some of the correspondence between T. and D. and after having read the letter Exhibit C. giving Mrs. Resler the offer of the discount plaintiff called on Mrs. Resler. There was some conversation between the plaintiff and her but they do not agree as to what was said or done at that time. It is the claim of Mrs. Resler she did not know of the offer at that time, that Anderson knew of it and fraudulently concealed it from her and attempted to get her to assign her share of the crop of the land, that they agreed that she would assign the Sorenson contract and deed the land to T. and T. would release her from all her obligations and that the plaintiff claimed to represent T. and promised to take the matter up with him but instead of doing so he told D. she had rejected the offer. Plaintiff contends he told Mrs. R. about the offer but put it this way:

"Well, I told her like this that Mr. Dougherty got a letter from Mr. Tiemeyer and Mr. Tiemeyer wants his money and he wants action right away. So she asked me, she says "Have you got the money?" I says "I have not, I have not got it all." And she said she didn't have it, so how is he going to get it, she says. "Well, I says, "I don't know but I know he can foreclose and get it."

Mrs. Resler says:

"Well, Mr. Andersen came to me and said he had a letter from Mr. Tiemeyer and Mr. Tiemeyer was anxious to have this matter settled, and he wondered what I was going to do about it; that he would like to see Tiemeyer getting his money. And I spoke very frankly to Mr. Andersen when he talked about the matter to me. I thought he was a friend of mine as well as Mr. Tiemeyer; and I said I would like to see something done and I submitted a proposition to him. I thought that perhaps we might get together whereby the Sorensons might be able to take it up or I would quit claim to Mr. Tiemeyer or the Sorensons and have them take it off my hands, and that I felt I would much rather do it that way if I could. I spoke of this to

Mr. Andersen and he told me he would write to Mr. Tiemeyer to that effect."

On Sept. 22nd Andersen wrote T. saying: (Exhibit B)

". . . I spoke to Mrs. Resler yesterday and she stated she was not going to take up your offer. This being the case I take it from your letter that you will turn your offer of $5,000.00 over to me," etc.

He then offered to pay $5,000 sending him $1,000 in cash and offering him his note to cover the balance, with one Sather as co-signer. This was not received by T. until Sept. 26th (Exhibit 8) and plaintiff had not sent him note. However on the 26th day of September T. wrote Exhibit 8 stating the note offered would be satisfactory if paid Dec. 1, 1927. Just when the letter was received by the plaintiff and the note sent is not clear but in the meantime Mrs. R. paid over the money and as the other letters took about four days to reach their destination it is clear the acceptance and payment must have been before plaintiff and T. completed their deal. Exhibit 9 is dated Sept. 27th and is a letter from T. to the plaintiff stating one Omdahl had been authorized to execute an assignment of the note and mortgage but the record shows this assignment was not made until Sept. 30, 1927. On this latter date plaintiff demanded of D. the possession of the note and possession was refused. D. was still the agent of T. and thus T. repudiates the deal.

On or about Sept. 27th D. communicated to Mrs. Resler the offer made in Exhibit C. not knowing anything about this correspondence going on between the plaintiff and T., and Mrs. Resler immediately took it up, considering she was getting a discount of $1,700, and deposited the money the next day in the bank. It was then for the first time Mrs. Resler knew the plaintiff was trying to get the note for himself.

It seems that during some of the earlier conversations between the plaintiff and D. the former said in effect this is a pretty good deal. I think I will take it up myself and the latter said "Why don't you do it?" This appears to be the only intimation that either D. or Mrs. R. had of any personal desire on the part of the plaintiff. D. testifies that he had at that time the note in his possession and that on the 27th of September he wrote T. advising him Mrs. R. had accepted the offer and the next day wired him that the offer had been accepted and

requested a satisfaction of mortgage. But in the meantime T. had received the letters from plaintiff and assuming that Mrs. R. had rejected the offer authorized an assignment of the note and mortgage to Andersen. This was done on Sept. 27th and was received by Andersen on Sept. 30th. The district court found the plaintiff had misled Mrs. R. by failing to inform her of the offer which was made saying in his memorandum opinion:

"Without hestitation I accept the version of Mrs. Resler; first, because of the reasonableness of her statement and second, it cannot be said Andersen has maintained any burden of proof of this subject by a fair preponderance of the evidence; in addition to that I saw both of the parties on the witness stand watched them while they testified and have considered the reasonableness and unreasonableness of the stories which they told me . . . from this alone I am satisfied that Mr. Andersen must be mistaken or have forgotten. In view of this situation I feel strongly that this plaintiff misled Mrs. Resler and if this was not done purposely with the idea of getting some $1,700.00 of profit in the buying of the paper himself rather than let Mrs. Resler have the benefit of the discount, nevertheless, the result was the same to Mrs. Resler. It must be remembered that this an an action in equity and that the plaintiff is in a court of equity asking for affirmative relief."

If the facts are as found by the trial court then T. through his agent had made Mrs. R. an offer which was to be communicated to her and remain open until she definitely accepted or rejected it; the agent did not communicate it to her immediately and the plaintiff, knowing about the offer and not communicating it to her either purposely or unintentionally misled Mrs. R. He must have known from her conversation that she was ignorant of it. Knowing this he opened negotiations with T. During the progress of these negotiations he knew that Mrs. R. had this offer and that it was still open and hence that she had not rejected it, if her version be correct. He knew her rights in the matter and therefore in his dealing with T. was fully apprised of the situation and misled T. into giving an assignment. In the meantime Mrs. R. learned about the offer, accepted and complied with it and did all she was required to do. The payment by Mrs. R. to D. the agent of T. has never been repudiated nor had T. returned the money paid.

It is but fair to the plaintiff to state that he claims the idea of

buying the note for himself was suggested by D. that the latter told him he could "sell the land for whatever it will bring and get judgment against Mrs. Resler, she is good for it," and later he told D. he had "made T. an offer on that deal" and D. told him, "All right I won't do any more to it." D. disputed all of this. The court found against the plaintiff on all these disputed points, including the foregoing.

The weight to be given to the findings of the trial court on disputed facts depends largely upon the nature of the case. On appeal from a judgment rendered in an action properly triable to a jury, but tried to the court without a jury, the findings of fact are presumed to be correct, and when such findings are based on parol evidence they will not be disturbed unless shown to be clearly opposed to the preponderance of the evidence even if they do not have the force of a verdict. Baird v. Goforth, 54 N. D. 805, 211 N. W. 587. This is the holding from the very earliest time and has been consistently followed ever since even though in State v. Banks, 24 N. D. 21, 138 N. W. 973; Updegraff v. Tucker, 24 N. D. 171, 139 N. W. 366; Steidl v. Aitken, 30 N. D. 281, L.R.A.1915E, 192, 152 N. W. 276 and Bergh v. John Wyman Farm Land & Loan Co. 30 N. D. 158, 152 N. W. 281, seem to go as far as to say such findings have the same force as the verdict of a jury in a jury case.

See: Jasper v. Hazen, 4 N. D. 1, 23 L.R.A. 58, 58 N. W. 454; Dowagiac Mfg. Co. v. Hellekson, 13 N. D. 257, 100 N. W. 717; Ruettell v. Greenwich Ins. Co. 16 N. D. 546, 113 N. W. 1029; Feil v. Northwest German Farmers Mut. Ins. Co. 28 N. D. 355, 149 N. W. 358; Griffith v. Fox, 32 N. D. 650, 156 N. W. 239; State Bank v. Maier, 34 N. D. 259, 268, 158 N. W. 346; Stavens v. Nat. Elevator Co. 36 N. D. 9, 161 N. W. 558; Richards v. Northern P. R. Co. 42 N. D. 472, 478, 173 N. W. 778; McCormick v. Union Farmers State Bank, 48 N. D. 834, 187 N. W. 422; Gotchy v. North Dakota Workmen's Comp. Bureau, 49 N. D. 915, 928, 194 N. W. 663; Flath v. Bankers Casualty Co. 49 N. D. 1053, 194 N. W. 739; Hartung v. Manning, 50 N. D. 478, 196 N. W. 554; State v. Southall, 50 N. D. 723, 197 N. W. 866; Rasmussen v. Chambers, 52 N. D. 648, 204 N. W. 178; Quinn Wire & Iron Works v. Boyd, 52 N. D. 273, 202 N. W.

852; Vincent v. Reynolds Farmers Elevator Co. 53 N. D. 749, 755, 208 N. W. 158.

In equity cases the rule is somewhat different. Where on appeal to the supreme court a trial de novo is demanded, the trial court's findings are entitled to and should be given appreciable weight but they are not clothed with the same presumption of correctness as in cases not triable de novo in the court. This is the holding in Merchants Nat. Bank v. Armstrong, 54 N. D. 35, 208 N. W. 847, and is the uniform holding in the following cases: Christianson v. Farmers' Warehouse Asso. 5 N. D. 439, 444, 32 L.R.A. 730, 67 N. W. 300; Englert v. Dale, 25 N. D. 587, 597, 142 N. W. 169; Merchants Nat. Bank v. Collard, 33 N. D. 556, 565, 157 N. W. 488; Drivdahl v. International Harvester Co. 43 N. D. 284, 174 N. W. 817; Security State Bank v. Wernick, 51 N. D. 219, 224, 199 N. W. 948; Doyle v. Doyle, 52 N. D. 380, 389, 202 N. W. 860; Williston v. Ludowese, 53 N. D. 797, 208 N. W. 82; First Nat. Bank v. Weiss, 54 N. D. 883, 211 N. W. 979.

Thus while this court must on this appeal, determine the facts from the evidence submitted, nevertheless the findings of the trial court are considered seriously; "especially when based upon the testimony of witnesses who appeared in person before that court." Christianson v. Farmers' Warehouse Asso. supra. We see no reason for overturning these findings. The evidence is in dispute, but the findings of the trial court are in harmony with the testimony submitted, have plenty of support and there is nothing to lead us to accept plaintiff's version of disputed facts rather than the statements of the defendants. Plaintiff clearly, even under his own explanations, was seeking to profit by a chance hearing of T.'s anxiety to close out a protracted deal, posed as interested in seeing the collection made, and sought to deprive Mrs. R. of the discount offered and turn it to his own benefit. Believing Mrs. R. financially responsible so as to collect a deficiency judgment he did not so state to T. so as to permit him to collect in full but sought it for himself. He must have known that T. as a friend of the Reslers, was anxious to give the widow every possible chance to clear her land. At the very best view he remained silent. We therefore adopt the findings made by the trial court as the facts in this case.

Appellant insists "that even if every issue of fact is resolved in favor of the defendants and even if there had never been an assignment

to Andersen and the present action was prosecuted by Tiemeyer, the defendants could not prevail because there never was, under the disputed evidence, an executed accord and satisfaction." We do not believe it is necessary to determine whether the offer of T. to Mrs. R. her acceptance thereof and the payment of the money to T.'s agent as directed by her is an executed accord and satisfaction. It will be noted that T. is not disputing an executed accord and satisfaction. He was the creditor and the creditor is not raising the question. So far as the record shows T. was perfectly satisfied with anything Mrs. R. did. True, after the payment he did not know what to do in the matter, having received $5,000 from Mrs. R. and $5,000 or its equivalent from the plaintiff; but it is evident he was not holding Mrs. R. primarily responsible and was looking to the Sorensons first. He is not saying the accord and satisfaction is not complete.

The appellant is not in position to come into this court and raise that question. Under the facts in the case he learned incidentally, of the offer which T. had made Mrs. R.: he immediately offered to go and see her; the findings of fact show she did not know of the offer at that time and that Andersen, though knowing about the offer did not tell her but made an attempt at settlement as if no offer had been renewed; he, according to the findings, falsely represented to T. that she had refused the offer and thus fraudulently obtained an assignment of the claim from T. However, co-incidentally she learned of the offer and paid her money, and this before Andersen received any assignment through his fraudulent dealings. Hence he had full knowledge of her rights and his payment has no more effect than if he knew of her payment at the time. It would be a different matter entirely if the assignment from T. had not been obtained by fraud and misrepresentation and T. were contesting the settlement either directly or by repudiation thereof and agreement with another. We might then be required to consider whether the plaintiff stood in his shoes. The record shows the land had been sold to Sorenson Bros. and they were expected to pay the mortgage indebtedness as part of the purchase price together with taxes and T. was looking to them primarily. The reduction given Mrs. R. would not inure to the benefit of Sorensons and she could have collected the whole amount from them on the purchase price if she insisted on the contract. Thus she had a personal interest

in the discount offered. T. had a right to make her a gift of the unpaid balance, and permit her to collect it from Sorensons and so far as the record goes he never repudiated her payment, though in Ex. F, written Sept. 28, after getting the letter from D. he says:

"He (Andersen) wrote me that he had seen Mrs. Resler before writing me, and she told him she did not want this note on my terms. I am sorry but she should have acted sooner. I am also writing Fred Andersen and may be they can arrange matters between them." etc.

It is quite clear T. considered his deal with Mrs. R. a sale of the note to her and money received as the purchase price of the note rather than a payment on the note. Hence T. must have considered that Mrs. R. was not liable personally, or at least was so treating the deal. The payment to D. was a payment to T. and was made before plaintiff completed the deal with T. Hence when T. assigned the mortgage to the plaintiff he had nothing to assign. The purchase of the note by Mrs. R. carried the mortgage with it and the plaintiff had notice of her rights and interest.

The plaintiff now comes into a court of equity seeking to foreclose a mortgage the assignment of which he obtained by fraud. It is true T. is not raising the question of fraud but the act of the plaintiff militates against the rights of the defendant Resler. This court will not be a party permitting such a fraud to stand. So far as the settlement between Mrs. R. and T. is concerned it was a continuing offer to hold good for a reasonable time after his agent communicated it. The record shows she did not reject it. She accepted it as soon as she heard of it. It was T.'s intention that she should have this opportunity. The plaintiff misled him into believing she had rejected it, and now seeks to take advantage of his deception. It cannot be done in the courts. The judgment of the lower court is affirmed.

BURKE, Ch. J., and NUESSLE, BIRDZELL, and CHRISTIANSON, JJ., concur.