This is an appeal from a judgment for the dismissal of the action with costs.
Plaintiff owned and operated an elevator, in Brinsmade, this State, and between August 30, 1925 and September 13, 1929, stored wheat *Page 116 
belonging to the defendant, issuing storage tickets therefor. He says that during said period he made advances to the defendant on said grain; that neither the storage charges nor the advances were paid, and therefore he foreclosed his warehouseman's lien, and that there was a balance due him amounting to $8,619.84. So he asks judgment for this amount.
The defendant admits she delivered grain to the plaintiff for storage and that she received advances thereon during the times specified; but alleges that said storage was incurred and the advances made under the agreement "that the plaintiff would advance to the defendant not in excess of seventy-five per cent of the market value of such stored grain, and that if at any time thereafter the market value of said grain declined so that the said grain was not worth a reasonable amount above the advances and storage charges, the plaintiff would sell the said grain and apply the proceeds therefrom to the payment of said advances and such storage charges." She alleges the plaintiff sold the grain for an amount in excess of the advances and charges, that he owes her the sum of $2,500 and therefore asks judgment for this amount.
Each party moved for a directed verdict, the jury was dismissed and the court rendered judgment in favor of the defendant for the dismissal of the action, making the findings of fact and conclusions of law and order for judgment upon which this judgment was entered.
The plaintiff appeals from the judgment alleging the court erred in overruling various objections to the introduction of testimony and specifically in making findings of fact favorable to the defendant.
There is little dispute but that the amount of wheat as found by the trial court was delivered by defendant and that during the same period the plaintiff advanced to the defendant the sum of $9,868. There is some dispute in regard to another alleged advancement of $1,000 claimed by the plaintiff; but we need not determine this issue.
The court found the defendant failed to show the price received by the plaintiff for the defendant's grain at the time it was sold, exceeded the amount of the advances made, with accrued interest and proper storage charges. Therefore, the court refused to allow the defendant anything on her counterclaim.
The specifications of error in the admission of evidence deal with overruling objections to the examination of plaintiff as to the amount *Page 117 
of stored grain on hand during the period involved, the amount of outstanding storage tickets, the introduction of reports to the Board of Railroad Commissioners on stored grain; the examination of the buyer as to "the practice of selling the grain and repaying" advances when the price of grain declined, and the shipping out and selling the defendant's grain shortly after it was received; and in sustaining certain other objections to the examination of the plaintiff and similar rulings. Further specifications are made with reference to the court's failure to find the amount of the storage charges, and the additional claim for the alleged $1,000 advance; that the findings made are not supported by the evidence, that the conclusions are not warranted, and the court erred in granting defendant's motion for judgment.
We have examined the evidence with reference to these objections and we find the rulings with reference to admission or rejection of testimony correct.
In view of the evidence with reference to the contract made between the parties there was no prejudice to the appellant in failing to find the exact amount of storage charges and the total amount of the advances, even if error may have been committed during the examination of the witnesses with reference thereto; as what was found far exceeded the value of the wheat represented by the tickets.
The elevator business of the plaintiff was transacted largely by the buyer at the elevator, and it is clear this buyer had large powers granted him.
The trial court found, in effect, that "the several elevators at Brinsmade adopted a policy of advancing up to seventy-five per cent of the market value of grain stored in such elevator and continued such practice down to 1929;" and when the elevator deemed its security insufficient or doubtful it had the right to sell the grain and apply the proceeds in payment of the advances and the storage charges; that the first advance made to the defendant was on August 30, 1925, and the last on August 29, 1929; that when advances were made they ranged from twenty per cent to seventy-five per cent of the value of the grain at the time of advancement, and that the defendant was advised by plaintiff's buyer and agent "that when the price of grain went down so that the same was only sufficient to pay or cover advancements, interest and storage that the same would be closed out and that defendant *Page 118 
would have no further interest in the grain stored on which said advances had been made and defendant in taking said advancements on her said stored grain understood that to be the agreement between the plaintiff and the defendant and defendant accepted said advances under said understanding and agreement;" that there is no proof defendant ever agreed to repay any portion of these advances; that a large portion of the storage tickets was in fact kept and held by the plaintiff, but the court was unable to determine which storage tickets were held by either party at any given time; that the price of grain declined sharply and before the time of foreclosure of the alleged warehouseman's lien the value of the grain was far below the amount of advances made and storage charges accrued; that no attempt was made to get security, or promissory notes or other evidence of debt for the difference and no statement was rendered to the defendant showing the advances, interest accrued or storage charges due; that long after the market value declined below the value of the grain stored the plaintiff purchased additional grain from the defendant and paid her for the same without suggesting the application of this grain on any claim he had; that the grain received for storage was in fact sold by the plaintiff shortly after it was received, and during the period involved it was not an infrequent occurrence for the plaintiff to find he had less grain on hand than the grain represented by outstanding storage tickets.
The appellant himself testified that in August 1929 he had but 4,118 bushels of wheat and 4,150 bushels of durum on hand though the storage tickets of defendant alone called for 5,436 bushels of wheat and 5,797 bushels of durum, and he testified that in August 1930 he had on hand but 4,146 bushels of wheat and 4,216 bushels of "grain" though there was outstanding on storage, in addition to the defendant's storage 1,550 bushels of wheat and 686 bushels of "grain," and it was at this latter time he went through the form of foreclosing his warehouseman's lien.
Defendant testified that before any foreclosure took place appellant's agent said: "I was out; I had no more equity in them tickets; I was the loser." Her daughter testified that the buyer, on presentation of tickets to get more money, said: "They are dead. Your mother has no more interest in them. The best thing for you to do is to put a man to haul wheat in to town," that she said: "Well, if they are dead what *Page 119 
is the use of keeping them," and that he replied: "Well, I don't know as it makes much difference. I suppose you can just as well take them," but at the same time he kept some and the ones she had she took back with her.
Appellant testified on examination before trial that only once or twice did he "carry any grain in storage in the terminals in Minneapolis or Duluth;" that about once a year he weighed out the grain in his elevator and on July 1, 1930, he had on hand an amount equal to about ten per cent. of outstanding storage tickets, including the defendant's tickets. On the trial he testified to the same effect.
When the buyer was asked by appellant's counsel if there was "any agreement to sell her grain . . . when the advance and the market price got close together . . . that you were to sell the grain for her," he answered: "No, not that I remember;" that he "couldn't sell a person's grain without authority;" that he had no "understanding . . . to sell the grain without her bringing in the ticket and authorizing" him to sell, and that there was no talk about that. Later he stated he could not remember whether she told him to sell when "the price of grain came down nearly to the amount of the advances" whether she came in or not.
Upon the findings related, and others in harmony therewith, the trial court found that the agreement and contract alleged by the defendant was in fact made; that the plaintiff had sold her grain in accordance therewith and therefore had no claim against the defendant for the amount demanded.
These findings are challenged by the plaintiff; but there is ample evidence in the record to sustain them. It is true there is a conflict in the testimony, and counsel for plaintiff argue that the probabilities arising from ordinary business transactions are with the plaintiff; particularly as defendant and her immediate family had, for years, been customers of plaintiff. On the other hand it may be argued that the probability is no grain buyer would keep making advances to a customer on a falling market and to the extent depicted here, nor pay cash for later purchases, nor not attempt to get additional security, nor delay foreclosing the warehouseman's lien for almost a year after the last advance and until after his bank failed.
In an action properly triable to a jury, but tried to the court, the *Page 120 
findings of the trial court on disputed matters of fact are presumed to be correct and are adopted by this court unless clearly against the preponderance of the evidence. See Baird v. Goforth, 54 N.D. 805, 211 N.W. 587; Andersen v. Resler, 57 N.D. 655, 664, 223 N.W. 707; Zuber v. Erickson, 58 N.D. 322,226 N.W. 510; Fuller v. Reed, 60 N.D. 680, 236 N.W. 267; Lincoln Nat. L. Ins. Co. v. Sampson, 61 N.D. 611, 619, 239 N.W. 245.
Appellant says that even if the agreement alleged by the defendant was made the defendant was under obligation to prove her grain "was in fact sold at a price sufficient to pay her indebtedness to the plaintiff," and further raises the question of whether the plaintiff was required to make the sale or had the option of declining to sell — though not stating it in such terms.
The finding of the trial court to the effect that the plaintiff had possession of the greater number of the storage tickets is supported by the evidence, and there is no contention that any of the tickets were sold by the defendant.
The agreement as alleged shows a contract to loan money on the stored grain rather than the sale of grain for the amount advanced; but we need not discuss whether there was an option given to the plaintiff. If he did sell the grain shortly after it was received and did not keep wheat on hand to satisfy the tickets then we must determine whether it was in accordance with the agreement or a conversion. The evidence shows conclusively that the plaintiff sold the grain from time to time shortly after it was received. An attempt was made to show that he "hedged" on such sales; but we are not required to determine the legal validity of such process. There is no sufficient proof of "hedging" it to show that this method was resorted to at the time of the sale of defendant's grain.
As pointed out already appellant did not retain enough wheat to satisfy outstanding tickets at the time of foreclosure or at many times prior thereto.
The sale itself was a conversion (Stutsman v. Cook, 53 N.D. 162, 204 N.W. 976) unless made in conformity with the agreement, and was made long before the depreciation in the value of the grain. The court found that the sale was made in conformity with the contract, *Page 121 
and said finding should be sustained in accordance with the evidence rather than one which finds a conversion.
No reversible error being shown the judgment is affirmed.
CRISTIANSON, Ch. J., and NUESSLE, and BIRDZELL, JJ., and JANSONIUS, Dist. J., concur.
Mr. Justice BURKE did not participate, Hon. FRED JANSONIUS, Judge of the Sixth Judicial District, sitting in his stead.