[File No. 6252.]

ED SCHULENBERG, Receiver of the First National Bank of Litchville, Respondent, v. A. O. OURENHAGEN and Arthur Ourenhagen, Appellants.

(254 N. W. 269.)

Opinion filed April 5, 1934.

*A. P. Paulson* and *J. A. Dingeldein,* for appellants.

532

*Hanchett, Sproul & Sad,* for respondents.

BURR, Ch. J. This action resolves itself into an attempt to subordinate a deed and mortgage to the judgment lien of the plaintiff. The defendant A. O. Ourenhagen is the father of the defendant Arthur Ourenhagen and the defendants are hereafter denominated father and son.

The trial court found that the deed and the mortgage given by the father to the son were given in fraud of creditors, "without consideration and with intent to hinder and delay the plaintiff in the collection of his claim, all of which was known to the grantee."

Judgment to this effect was entered in favor of the plaintiff and the defendants appeal demanding a trial de novo.

The controversy is essentially one of fact. The only witnesses are the deputy receiver in charge, one of the bank officials, and the two defendants. Counsel on both sides, with commendable zeal, have collected and collated practically all of the decisions of this court dealing with fraudulent conveyances; but there is little dispute as to the law of the case.

In the fall of 1930 the defendant A. O. Ourenhagen was indebted to the First National Bank of Litchville, as represented by two promissory notes then due, and on May 20, 1932, action was commenced on the notes.

On May 27, 1932, the father executed to his son a mortgage on two quarters of land in Barnes county, ostensibly to secure payment of a note made the same day for $2,500.00 and the mortgage was recorded the next day.

On December 28, 1932, the father deeded to the son another half section of land in Barnes county for the ostensible consideration of $3,500.00. This mortgage and this deed are the transfers involved. On March 7, 1933 a judgment for $2,212.14 was docketed against the father, based on the promissory notes due the bank.

The defendants allege the deed and the mortgage were given because of a bona fide indebtedness due from the father to the son. As the basis of this debt they claim that the son, now thirty-two years of age and unmarried, at all times has lived at home with his parents; that

in 1921 an agreement had been made between the father and son to the effect that if the son would remain on the farm and manage it he would be paid five hundred dollars per year, given his room and board, and a few acres of land every year to farm for himself for his incidental expenses; that the father would pay five per cent. interest on any amount due; that this agreement would include the year 1920; also that the son worked from that time until the date of the transfers, and received no portion of his wages; that there was due to him at that time about $8,500.00 which included $400.00 loaned to the father, to pay taxes; that at the time of the commencement of the action on the promissory notes the son became alarmed over his indebtedness and demanded payment and security; that the deed was given in partial reduction of the debt, the mortgage given to secure part of the balance, and that there remains unsecured to the son the sum of $2,-500.00, for which no note or other written evidence has been given.

The testimony of the defendants shows that ever since the years 1918 or 1919 the son has practically had charge of the entire farm; that this farm included the two half sections involved in this action and land, the title to which is in the name of the mother, and which is the homestead of the father. For the last twelve years the son hired the help, paid the bills, sold the grain and other produce and took charge of the entire farm. Each year he kept and retained for himself the crops from fields of from fifteen acres to thirty acres; using the proceeds for the purchase of clothing and for other incidental expenses. The stock appears to be owned by the father as well as practically all of the machinery. From the year 1920 to the present time there have been periods when there were poor crops and poor prices; but there were also years of good crops and good prices. It appears that in none of these years did the son pay to himself any portion of this alleged yearly wage of $500.00. The agreement between the father and son was not in writing and according to the defendants themselves no statement was ever rendered by the son to the father until shortly before the trial of this action. · The son admits that from the small plots of land which he farmed for himself each year he received in all over $1800.00 and it would appear from the testimony that this was net, the expense of farming the portions being deducted from the other receipts.

There is testimony that immediately after the commencement of this action the father stated to the bank officials they would take what he offered or they would get nothing. There is some dispute as to the exact language and its import; but there is no dispute but what the son told the father he would have to take care of his property or "they would eat him up." By this the defendants claim they meant that the property would be taken from the father and the son would have nothing for his claim.

That in the absence of fraud an insolvent debtor has a right to prefer his creditors is not disputed, and is the law in this jurisdiction. Comp. Laws, § 7218; Merchants Nat. Bank v. Armstrong, 54 N. D. 35, 44, 208 N. W. 847. This means a bona fide creditor. Unless there was this debt for wages from father to son the transfers cannot be sustained, for either he owed the $500.00 a year or it is a subterfuge to delay creditors.

The trial court found that this claim was not made in good faith. The findings of the trial court in such case as this are entitled to appreciable weight; (Merchants Nat. Bank v. Armstrong, supra) more particularly when the matter depends largely upon the oral testimony of witnesses. See also Andersen v. Resler, 57 N. D. 655, 665, 223 N. W. 707. The main witnesses are the defendants. The trial court was in position to and did observe their demeanor and thus had the advantage of the indefinable, imponderable yet nevertheless effective atmosphere of the case.

The trial court, in a memorandum opinion, made an exhaustive analysis of the testimony.

The father said he gave the son the mortgage right after he was sued, that later, in thinking it over he decided "they might take hold ·of" the other half section and so he thought he better deed this to the son also.

The defendants were very hazy and indefinite on many features which had a tendency to cast doubt upon the strength of their recollections. The son had insisted at first that the contract with his father was made in 1918; but thereafter both defendants agreed that it was made in 1921 but was to include 1920. The statement of account made by the son and presented to his father was made about the time the son "received notice to come in to the hearing" in April 1933;

whereas the father testified it had been presented to him the fall before.

The record shows that several years before this time the father had been threatened with suits on some indebtedness and immediately at that time transferred his real estate to his wife. After the settlement of that dispute all of the real estate save one quarter was retransferred to the father. It is true in this case both defendants deny there is any agreement to retransfer the property to the father; but it is a significant fact that none of the defendants claim any attempt made to collect or settle for the $8,500.00 alleged to be due from the father to the son until the commencement of this action and even then the alleged indebtedness was not put in settled shape. The deed and the mortgage covered but a portion of the alleged indebtedness and no note was taken for the remainder, though the father had given a note to the son in 1926 for the $400.00 borrowed for taxes.

No claim is advanced by either of the defendants that even during the prosperous years the son made any attempt to collect any portion of his wages though he had complete charge of the farming operations. He showed considerable business ability. He earned money from other fields of labor and saved it: He had his own checking account in the bank, had his C. Ds. and government bonds. He was making investments and yet he took no steps to collect any portion of his pay. It is not as if the father had said "all that I have is thine," for there are two married daughters. Financial statements made by the father, and wherein he was required to list all indebtedness over $500.00 contain no statement of any debt to the son, though made during the time involved.

This is peculiarly an issue of fact. If there was no agreement between father and son relative to the payment of an annual wage, or even if there were such a debt, if the purpose in making the transfers was to hinder and delay creditors in the payment on the collection of their claims, rather than to prefer a creditor then it is fraudulent so far as the plaintiff is concerned. See Holden v. Walker, 63 N. D. 372, 390, 248 N. W. 318. It is the intent which taints the transaction. Sheridan v. McCormick, 39 N. D. 641, 168 N. W. 59, 8 A.L.R. 523. Our statute says (Comp. Laws § 7223), that fraudulent intent is one of fact, "nor can any transfer or charge be adjudged fraudulent sole-

ly on the ground that. it was not made for a valuable consideration." The relationship between the parties is not in itself a badge of fraud. First Nat. Bank v. Mensing, 46 N. D. 184, 180 N. W. 58. But being such issue of fact each case presented is largely independent of others. It seems to be well established that the father was indebted to the son, for a time at least, for the money advanced to pay taxes and represented by the note which both defendants say is unpaid. But even if this indebtedness could be said to be a consideration for the transfer and is bona fide nevertheless if the purpose in making the transfers is fraudulent then the fact the father owed the son on this note would be unavailing. The transfers would be made to hinder and delay creditors in the collection of their debts, and would therefore be fraudulent conveyances even if the $400.00 note is still owing.

The evidence points strongly to the conclusion that the purpose of making the transfers was not to secure to the son the payment of the $400.00 due for taxes or even any amount which the defendants may think he was justly entitled to for services; but rather to render it extremely difficult for the plaintiff to collect on the notes which the defendants knew would soon be represented by a judgment.

After a review of the entire record and a trial de novo upon the evidence presented, together with consideration of the weight to be attached to the findings of the trial court, we arrive at the same conclusions and therefore the judgment is affirmed.

BURKE, NUESSLE, CHRISTIANSON and MOELLRING, JJ., concur.