[File No. 6802.]

STATE OF NORTH DAKOTA FOR THE BENEFIT OF THE WORKMEN'S COMPENSATION FUND OF THE STATE OF NORTH DAKOTA and T. J. Wiese, Appellants, v. CITY OF WILLISTON, NORTH DAKOTA, a Municipal Corporation, and Joseph H. LeDosquet, Respondents.

(8 NW(2d) 564.)

Opinion filed March 24, 1943.

*Lynn G. Grimson,* Assistant Attorney General, and *Eugene A. Burdick,* for appellants.

*Everett E. Palmer, O. B. Herigstad,* and *Ivan V. Metzger,* for respondents.

CHRISTIANSON, J. This action was brought in the name of the state for the benefit of the Workmen's Compensation Fund and one J. T. Wiese against the city of Williston and one Joseph H. LeDosquet. The action is brought under the provisions of the Workmen's Compensation Act, which provides that when a compensable injury is sustained under circumstances creating in some other person than the Workmen's Compensation Fund a legal liability to pay damages, the fund shall be subrogated to the right of the injured employee or his dependents to recover against that person, and further that any excess

so recovered above any award paid or to be paid from the fund shall be paid to the injured employee or his dependents less the expense of the action. Laws 1919, chap. 162, § 20; 1925 Supplement, § 396a20.

It is alleged in the complaint that on February 1, 1938, the said J. T. Wiese was employed by Electrolux Inc., and as such employee was insured in the Workmen's Compensation Fund of this state; that the defendant LeDosquet was a plumber duly licensed under the ordinances of the city of Williston; that said LeDosquet made an excavation, adjacent to the vehicular traveled portion of a public street, running perpendicular to the curb and between the curb and sidewalk in one of the streets in the city of Williston, and negligently and carelessly left said excavation open, uncovered, unguarded and unlighted; that on the evening of February 1, 1938, the said Wiese, while in the course of his employment as a salesman and demonstrator for Electrolux Inc., fell into said excavation and sustained injuries; that thereafter he received compensation for such injuries from the Workmen's Compensation Fund. It was also alleged that the defendant city breached the duty, which it owed to the public generally and to said Wiese, of maintaining said public street and property adjacent thereto in a safe condition.

The defendants interposed separate answers wherein they denied the allegations of the complaint, with the exception of certain paragraphs that were admitted. As further defenses it was alleged that the injuries sustained by Wiese, if any, resulted from his own negligence, and that his negligence contributed to and caused the accident and the injury alleged in the complaint.

The case was tried to the court without a jury upon the issues thus formed. In its findings of fact and conclusions of law, the court found that the defendant LeDosquet was negligent in failing to place proper rails· and lights around the excavation as required by the ordinances of the city; but that the city of Williston had no actual or constructive notice of the failure of said LeDosquet to properly guard the excavation, prior to the time of the accident; and that the accident and the injuries sustained by the said J. T. Wiese resulted from his own negligence and that his own want of care was the proximate

cause thereof, and that consequently the action should be dismissed against both defendants. Judgment was rendered and entered accordingly and the plaintiffs have appealed and demand a trial anew in this court.

The defendant LeDosquet is a plumber duly licensed under the ordinances of the city of Williston. In January, 1938, he was employed to install sewer and water facilities in a dwelling house located on Third Avenue in Williston. The house was occupied by one Botton. It stood an the west side of the street facing east and about 25 feet back from the main sidewalk that runs north and south along Third Avenue, and there was a sidewalk leading directly from the front of the house to the main sidewalk and the street. Immediately north of the house there is a vacant lot, and on the corner lot immediately north of the vacant lot there is a building occupied as a dwelling and a community grocery store. The defendant LeDosquet secured a permit from the city as prescribed by the ordinances and proceeded with his work. He commenced work a week or ten days before the first of February. He commenced to dig the ditch by the side of the house and out towards the street. He dug it section by section and as the water and sewer pipes were laid, he filled in that portion of the ditch in which the pipes had been laid.

The work continued and the pipes were laid up to and under the sidewalk in front of the property on the east side. The defendant LeDosquet testified that this part of the work had been completed before February 1, 1938, and that on that day he dug the ditch or excavation across the strip between the sidewalk and the curb adjacent to the main traveled portion of the street; that he commenced to dig such excavation about 8 o'clock in the morning and finished about 6 o'clock in the evening of that day. He testified that the ditch was about two feet in width and seven feet in depth; that there were piles of dirt on each side of the ditch some three feet in height; that before departing that evening he laid a "large" Christmas tree over the excavation, but that he did not put any lights, rails or other protection or warning at the excavation.

The accident which gave rise to this controversy occurred about 8 o'clock in the evening of February 1, 1938. No one was present or

saw the accident except J. T. Wiese, one of the parties for whose benefit this action is brought. Mr. Wiese was employed by Electrolux Inc. as a salesman. His work consisted of calling upon prospects, soliciting orders for vacuum cleaners and demonstrating the cleaners. Wiese testified that in carrying on his work he operated an automobile which he owned; that he had been in Williston on former occasions, and that he had stayed there and carried on his work for about one month immediately preceding the accident; that he had called at the Botton home on prior occasions some ten days or two weeks before the accident happened. He testified that about ten days prior to February 1st he called about 8 o'clock in the evening for the purpose of demonstrating the cleaner but found that the Bottons were "going out" that evening and hence no demonstration was given. He further testified that at that time he did not see any sewer or water ditch excavations. He also testified that he called at the Botton home about the middle of January; that this time he called about ten o'clock in the morning; that he drove his car and stopped the car in front of the house and walked from it to the house. Wiese testified that on the former occasion it had been suggested that he could come and make a demonstration any Tuesday evening they were at home; and that on the evening of February 1, 1938, when he drove into the street intersection immediately north of the Botton home he saw a light burning in the house and decided to call. He testified that he turned his car south and about half way between the corner of the block and the Botton dwelling house he pulled his car toward the curb and drove his car to a place about ten feet past the ditch in question. According to a map prepared by the city engineer, which was admitted in evidence upon stipulation, the sidewalk from the street to the house was located about ten feet south of the excavation in question, so the car must have been stopped in front of such sidewalk. He testified that it was quite dark; that there was no street light at the street intersection immediately north and that the locality was not lighted; that he drove with the driving lights on in the car; that he switched these lights off after stopping the car, and that he locked the door on the right hand side by manipulating the door latch from the inside, and stepped out of the car on the left hand side and into the portion of the street on the east

side of the car; that thereupon he walked to and around the rear of the car, at which point he observed what appeared to him to be a sidewalk that had been swept cleaan of snow; that he did not have a vacuum cleaner in his hands at the time; that he was calling to verify the appointment as was his practice, and that he intended to return for the cleaner if he found that he might put on a demonstration that evening; that he stepped onto what he supposed to be a sidewalk but which was the excavation and that he fell into the same and was injured.

There is a variance between Wiese's testimony, and statements which he made in the notice and claim which he filed against the defendant city. In such notice and claim he stated that he stepped out of the car from the side nearest the curb; that the ground was covered with what appeared to be a recent or fresh fall of snow; that he glanced to the right and in the darkness saw what appeared to him to be a sidewalk from the curb to the house, cleared of snow; that he stepped northward to his right a step or two while in the vehicular traveled portion of the street and then turned to his left and stepped toward the house onto what appeared to be a sidewalk, and thus fell into the excavation. He testified that the statements in the notice and claim were incorrect and that such notice and claim were prepared by an attorney to whom he related the facts while he was suffering pain and discomfort from his injuries.

The plaintiff called as witnesses one Smedshammer, who at the time of the accident occupied the dwelling house immediately south of the Botton home, and one Inga Thune, who occupied the building and operated the community grocery north of the Botton house. Smedshammer testified that he heard Wiese "holler" after he had fallen into the excavation and that he went to get a stepladder to get him out, but that Botton had brought a ladder, and that Wiese was out of the ditch when he (Smedshammer) returned. Smedshammer testified that he had noticed the excavation being made for the sewer and water pipes but that he had not observed the excavation across the berm at any time before that evening. Inga Thune testified that she heard the outcry; she testified that it was very dark and there were no street lights on the corner; she testified that she had seen an

excavation between the curb of the street and the sidewalk; that it appeared dark, as if the sidewalk had been swept and that there was snow on each side; also that she had seen the Christmas tree placed over the excavation; that she had seen the excavation across the berm several days before the accident happened; that she did not see Wiese that evening; that he was gone at the time she came out.

The plaintiff offered in evidence the proof of claim submitted by Wiese to the Workmen's Compensation Bureau, which claim is verified by him. In such claim he stated: "I was making evening calls on electric cleaner prospects. I stopped in front of Mr. Botton's residence which is on 3rd Avenue East in about the 400 block in Williston, N. D. at 8 P. M. It was very dark and I started to walk up what looked to me to be a path which had been shoveled out up to the front door, it having snowed a great deal that day, and walked into a sewer ditch eight feet deep."

The defendant offered in evidence the records of the Department of Agriculture Weather Bureau at Williston for February 1, 1938. This report states: "The sun rose cloudy at 8:22 A. M. and set cloudy at 5:54 P. M. The sky was cloudy from Jan. 31st until between 2 and 3 A. M. when it changed to partly cloudy and clear by 3 A. M. It continued mostly clear with a few scattered clouds until about 10 A. M., then partly cloudy until about 1:00 P. M., and cloudy from 1:00 P. M. until midnight. The day between sunrise and sunset averaged partly cloudy with 44% of the possible sunshine. The sun was shining most of the time up to 1 P. M.

"The light dry snow continued from the preceding day, and ended at 1:15 A. M. Central Time. There was only a 'Trace' of fresh snow during the first two hours of the day."

In its findings, the trial court found: "That on the first day of February, 1938 the said defendant LeDosquet . . . dug the sewer and water ditch between the sidewalk running north and south along the west side of Third Avenue east in the City of Williston and the curb adjoining the vehicular traversed portion of said public street and running at right angle to the curb and that the said excavation was located ten feet north of the cement walk leading across the said boulevard or berm directly to the said residence; and that no part of

said excavation was on the sidewalk or on the traveled portion of the street, nor on the portion of the boulevard or berm which is generally used by pedestrians for travel and not in direct line with the sidewalk leading from the main sidewalk along the said Third Avenue up to the said residence but approximately ten feet and eight inches north thereof. That such ditch was completed by the defendant LeDosquet at about six o'clock in the evening and upon completing said work, he placed a Christmas tree over the excavation, and at that time there were piles of dirt on the north and south sides of said excavation approximately three feet high. A light snow continued to fall from the preceding day and ended at 1:15 A. M. Central Time on the first of February, 1938 and that there was only a trace of fresh snow during the first two hours of said February 1."

"That the plaintiff J. T. Wiese was guilty of contributory negligence in walking into this excavation . . . and that such negligence of the plaintiff contributed to the accident and to the resulting injury and was the approximate cause thereof."

It seems clear that under the evidence in this case the question of contributory negligence was and is one of fact. If the case had been tried to a jury it would hardly be contended by anyone that the verdict should be set aside as contrary to the evidence or to the law. However, the case was tried to the court without a jury, and hence, is subject to review in this court on appeal, pursuant to § 7846, Comp. Laws 1913, as amended by chapter 208, Laws 1933, which provides for a review in this court of questions of fact specified in the statement or a review of the entire case. In the latter case all the evidence and proceedings are required to be embodied in the statement. The statute says that "the supreme court shall try anew the question of fact specified in the statement or in the entire case, if the appellant demands a retrial of the entire case, and shall finally dispose of the same whenever justice can be done without a new trial."

This court has said that it is apparent that this language in the statute "was not used with exact accuracy. The case is not tried anew. There is no new evidence adduced in this court. The case must be decided upon a record already prepared by a judicial tribunal. This court simply reviews the record, and the practical and necessary

result of such review is to correct the errors, if any, either of the law or fact, into which the court below may have fallen." And "the independent judgment of this court upon the record presented, irrespective of what the trial court may or may not have held, is based only upon a review of the record made in the trial court; and, when the judgment of the trial court was based upon error in law or fact, the judgment of this court necessarily reviews and corrects such error." Christianson v. Farmers' Warehouse Asso. 5 ND 438, 443–445, 67 NW 300, 302.

A case brought before this court by appeal pursuant to said § 7846, as amended, invokes the appellate jurisdiction of this court, and it is beyond the power of the legislature to authorize or require this court to exercise original jurisdiction in such case. N. D. Const. §§ 86, 87; Christianson v. Farmers' Warehouse Asso. 5 ND at p. 443, 67 NW 301; Guilford School Dist. v. Dakota Trust Co. 46 ND 307, 178 NW 727.

The function of this court on such appeal is to review the decision of the lower court, and "to correct the errors, if any, of law or fact," into which it may have fallen. The review is based upon and limited by the record made in the court below and transmitted to this court on the appeal. That record necessarily must contain not only a transcript of the evidence adduced upon the questions of fact sought to be reviewed and the proceedings had in the trial court, but the decision of the trial court; and in reviewing the record, "the judgment of the trial court upon the facts must still have weight and influence with this court, especially when based upon the testimony of witnesses who appeared in person before the court." Christianson v. Farmers' Warehouse Asso. supra; Doyle v. Doyle, 52 ND 380, 202 NW 860; Schulenberg v. Curenhagen, 64 ND 530, 254 NW 269; Turtle Mountain Supply Co. v. Krieg, ante, 338, 7 NW (2d) 432, 434.

The evidence bearing upon the question of contributory negligence consisted of testimony of witnesses who appeared in person before the court. As has been pointed out, as to some matters, where there was a conflict in the evidence, the trial court found the facts to be as testified to by defendants' witnesses.

According to the testimony of Wiese he was familiar with the

premises where the accident occurred. He had called at the Botton house on two previous occasions a short time before—one time in the morning, and the other time in the evening. As the plaintiff, Wiese, drove into the street intersection immediately north of the Botton house, about 8 o'clock in the evening of February 1st, he observed a light in the house. Thereupon he turned his car south, and about half way between the corner of the block and the house he pulled his car toward the curb. It was quite dark, and the driving lights were on. He drove until the car had reached a point some ten or eleven feet past the ditch or excavation. The driving lights were on all this time, and he switched them off after he stopped the car.

It would seem that the piles of dirt, and the excavation, must have been quite apparent as Wiese drove toward and past them, and that if he had paid any attention he would have seen them. Considering the record presented on this appeal, we cannot say that the district court erred in finding that Wiese failed to exercise due care, and that such want of care on his part contributed proximately to the accident and to the injuries which he sustained.

Judgment affirmed.

MORRIS, Ch. J., and BURR, NUESSLE, and BURKE, JJ., concur.